# PORTER *v.* PITTSBURG BESSEMER STEEL CO. (LIMITED).

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Submitted May 3, 1887. — Decided May 27, 1887.

The decision in this case, 120 U. S. 649, affirmed, on an application for a rehearing.

The lien law and the redemption law of the state of Indiana considered.

The effect of a redemption under the Revised Statutes of Indiana, §§ 770 to 776 considered.

Rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of *bona fide* creditors, as against any contract between the furnisher of the property and the railroad company, containing a stipulation that the title to the property shall not pass till the property is paid for, and reserving to the vendor the right to remove the property.

Notice of such a contract to a purchaser of bonds covered by such mortgage will not affect his rights if he purchased the bonds from those who were *bona fide* holders of them, free from any such notice.

PETITIONS for a rehearing of the case decided at this term and reported 120 U. S. 649. The petitions were as follows, omitting the titles :

And now come again The Pittsburg Bessemer Steel Company (Limited), The Cleveland Rolling Mill Company, Crerar, Adams & Company, and Volney Q. Irwin, appellees in the case above entitled, and jointly and severally petition this Honorable Court for a rehearing of the judgment which has heretofore been entered by this court in said cause, as contained in the Opinion of the Court filed herein, and for a rehearing of said cause; and they state the following grounds for such rehearing:

*First.* Your petitioners aver that there is manifest error in the opinion and judgment of this court in the above cause in this: In holding and adjudging that the appellant was entitled as against these petitioners to the entire proceeds derived from the sale of the property of the Chicago and Great Southern Railway Company, then being insolvent, by virtue of being the owner of all the bonds of that company, secured by its mortgages upon such property; whilst at the same time such appellant was himself liable to said corporation for the use and benefit of petitioners and other creditors of said company in the sum of $707,550, by reason of his ownership of the unpaid capital stock of said company to that amount, and which he acquired and became the owner of along with said bonds, and for a consideration common to both; and this in a cause to which all the creditors of the corporation were parties, and in which the court had appointed a receiver of the company and its property before appellant had either paid a dollar for said capital stock and mortgage bonds or filed his bill for foreclosure of the mortgage.

*Second.* They further aver that there is manifest error in the opinion and judgment of this court in the above cause in this: In holding that appellant acquired said bonds from Drexel, Morgan & Co. as pledgees thereof, and not from Henry Crawford as owner; the evidence in said cause, and also the written agreement between said appellant and Crawford, dated December 26, 1884, showing that appellant bought said bonds from said Crawford, as owner, and for a consideration more than $300,000 greater than appellant and Samuel M. Nickerson had agreed to pay Drexel, Morgan & Co. therefor;

and which written agreement, by its terms, superseded and became a substitute for the former agreements of June 25, 1884, between said appellant, Nickerson, Crawford, and Drexel, Morgan & Co. And your petitioners respectfully refer to said agreement of December 26, 1884, called the "Syndicate Agreement," as conclusive evidence of this, their contention.

*Third.* They further aver that there is manifest error in the opinion and judgment of this court in this: That it is held by this court that appellant succeeded to the rights of Drexel, Morgan & Co., as pledgees of the bonds, and that appellant was an innocent holder thereof; and that inasmuch as the remaining proceeds of sale of the railway property in the registry of the Circuit Court is only $325,194.27, and that appellant's claim on January 12, 1885, for the amount he paid Drexel, Morgan & Co. on that day, was $392,363.24, there was no surplus to be paid to your petitioners. Whereas, your petitioners show that the amount of appellant's purchase price from Henry Crawford was $750,000, or an amount exceeding that paid by appellant to Drexel, Morgan & Co. with interest thereon to the date of the decree of the Circuit Court, of over $300,000, which sum was part and parcel of the said moneys in the registry of the court by the terms of said contract of December 26, 1884, between said Porter and Crawford, and for which said Porter was and is in fact a mere stakeholder as between said Crawford on the one side, and these petitioners and the other creditors of said railway company on the other. And your petitioners aver that as between themselves and said Crawford and the First National Bank of Chicago, as his assignee with notice, they have an equity to be paid out of said sum, in the registry of the court in preference to said Crawford or said bank, and prior to said appellant as representing them.

*Fourth.* They further aver that there is manifest error in the opinion and judgment of this court in this: That it is held by the court, 1st, that there was no bad faith, irregularity, deceit or fraud in the execution of the mortgages, or in issuing of the bonds thereunder; and 2d, that such bonds represented

all the money that had ever been paid by the railway company for the Chicago and Block Coal Railroad, and for the construction of the sixty miles of the new road from Attica to Fair Oaks, excepting only some $40,000 or $50,000 received from aid voted by townships.

As to the first point, Henry Crawford, to whom the first million dollars of bonds were delivered in the latter part of December, 1881, was at the time of their delivery, the owner, by purchase and assignment, of all the shares of stock of the corporation, (including the shares of five out of nine directors composing the board,) with the exception of $10,000 of stock owned by William Foster; and was such owner and holder of said stock, including that of such five directors, on the 29th day of October, 1881, when the directors passed the resolution authorizing the execution of the mortgages and bonds. At the same time the laws of the state of Indiana, under which the company was incorporated, required that every director should be the owner, in good faith, of stock in the corporation, and Henry Crawford himself knew that five out of the nine directors had no stock, because he himself held and owned it. From the 23d day of June, 1881, until the 15th day of March, 1882, (whilst the original board of directors were in office,) Crawford had in fact the actual domination and control of this corporation, whose board of directors and officers did precisely as he dictated, with the one exception of refusing to authorize a proposed construction contract between the company and him. The reason for such refusal, as found by this court in its opinion, was, because Foster prevented it for the purpose of compelling Crawford to buy the remaining $10,000 of stock of the company still owned by Foster; and yet the court cites in the opinion, this one exception to Crawford's domination and control of the board of directors, as evidence that Crawford did not have such domination or control. Whilst during the period above, Crawford made contracts for purchases of material in the name of the corporation, appointed officers for it, superintended the construction of the road, and was recognized by the board of directors as in authority and control of the construction of the road,

although he, as yet, had no contract with the company therefor. And during the same period he prepared and caused to be passed the resolution of the directors of October 29, 1881, authorizing the mortgage and bonds, and prepared the mortgage and bonds; and by reason of his control he procured the delivery of the million dollars of the bonds to himself.

As to the 2d point, the bonds in suit represent, not only the money paid for the Chicago and Block Coal road, the money paid by Drexel, Morgan & Co., and the money paid by Crawford, but also, it is submitted by your petitioners, represent the indebtedness due to your petitioners and other creditors of said company, who furnished material and did labor, amounting in the aggregate to over $200,000.

The fourth condition in the memorandum delivered by Foster to Crawford's representative along with the million dollars of bonds, provided that out of the proceeds of such bonds, Crawford should furnish the necessary amount of money to pay the debts contracted since the 1st of July, 1881, and to complete the grading and superstructure, and to finish and equip the line of road from the junction with the Air Line road to Attica, being the line of road upon which the material and labor of your petitioners was expended. Your petitioners, therefore, respectfully submit that even upon the principle that the bonds were valid, they were placed in said Crawford's hands in trust for the very purpose of paying to your petitioners and other creditors the moneys now due them.

*Fifth.* They further aver that there is manifest error in the judgment and opinion of this court in this: In holding that the decree of the Circuit Court, which directed payment out of the proceeds of the railroad property to your petitioners on account of their just debts against the corporation, in preference to the bonds held by the appellant, should be reversed, and that petitioners should receive no part of such proceeds, because the appellant succeeded to the equities of Drexel, Morgan & Co., and Dull & McCormick, held by this court, in the opinion, to have been pledgees in good faith. Whereas, your petitioners submit, as herein above suggested,

that appellant is the representative of Henry Crawford, and his assignee with notice, the First National Bank of Chicago, and that this controversy should be treated as one between Henry Crawford and your petitioners. In such view of the case, your petitioners submit, that, as Henry Crawford, by his construction contract with the corporation, had agreed to build the railroad in question, as a condition and consideration for receiving any bonds whatsoever, he should furnish the material and the labor, and pay therefor; and that your petitioners, as against said Crawford and his assignee with notice, said bank, have a prior equity and lien upon the proceeds derived from the sale of said railroad property to the said Crawford and said bank.

*Sixth.* They further aver that there is manifest error in the opinion and judgment of this court in this: In holding and decreeing that petitioners can have no part of the proceeds of the railroad property in payment of their claims for its construction, and the securities representing which were owned by Henry Crawford, who employed these petitioners to furnish labor and material used in such construction, and who, after making the two successive pledges to Dull & McCormick and Drexel, Morgan & Co., of such securities, finally sold them to appellant under a written agreement of sale, by the terms of which all the purchase money — after the payment of the amount for which they were pledged — was to be held by appellant (to an amount exceeding $300,000) to abide the adjudication of the court, as to whether such proceeds should be paid to said Crawford or to these petitioners and other creditors of the railroad company. And your petitioners humbly submit that in this controversy over the moneys in question, they have a prior equity to said Crawford, for the building of whose railroad they furnished their material and labor; and that this prior equity exists in their favor, not only by the principles of courts of equity, (which look through the forms, to the substance of things done,) but rests upon natural justice.

*Seventh.* They further aver that there is manifest error in the opinion and judgment of this court in this: In holding

that it does not lie in the mouths of these petitioners to raise the objection as to the absence of a legal board of directors, because, if, as held by the court, the mortgages and bonds are invalid for want of such legal board, and for want of the legal existence of the corporation, the contracts of these petitioners are invalid for the same reason, and the consolidation with the Chicago and Block Coal Company's road would be void, and that road would be freed from all debts incurred by the Chicago and Great Southern Railway Company; whereas your petitioners show:

1st. That they were strangers to the Chicago and Great Southern Railway Company, and dealt with it at arm's-length.

2d. That the respective amounts decreed to them by the Circuit Court was upon evidence of what the labor and materials furnished by them — and which actually went into the construction of the road, and of which appellant and Henry Crawford got the benefit — were reasonably worth, regardless of any contracts with the company therefor, and as upon a *quantum meruit.*

3d. That every person to whose possession said bonds came, either as owners, pledgees, or purchasers, knew that a majority of the members of the board of directors were not the owners of any capital stock of said railway company, for the reason that each one of them — Dull & McCormick, Drexel, Morgan & Co., and appellant — as stated in the opinion of the court, successively contracted in writing for every share of stock of the corporation along with the bonds; and every share of stock, save four, and said bonds, were successively delivered to them respectively. Wherefore your petitioners submit that whilst they were each dealing with said corporation in good faith, without knowledge that a majority of its board of directors held no stock in the company, and that Henry Crawford dominated and controlled the corporation, the several holders of the bonds *had* such knowledge, and were not, nor were any of them, innocent holders of said bonds in good faith.

Wherefore, your petitioners respectfully pray that a rehearing in this cause may be granted and such further order and

decree made as to your Honors shall seem meet. And your petitioners will ever pray, &c.

The Cleveland Rolling Mill Co. filed the following petition :

And your petitioner, The Cleveland Rolling Mill Company, severally petitions for a rehearing of said cause, and of the judgment and opinion rendered therein against it ; and as grounds for such rehearing, states :

*First.* Your petitioner avers that there is manifest error in the opinion and judgment of this court in the above cause of your petitioner, in this : In finding, as a fact in said cause, against your petitioner, that it knowingly received, on account of its claim, money, which came directly from Drexel, Morgan & Co., as a result of the pledge of the bonds to them. And your petitioner states that the only evidence in said cause to that effect was introduced by said appellant, and was the testimony of Henry Crawford, who testified that he told your petitioner's president, William Chisholm, in the banking office of Drexel, Morgan & Co. in the city of New York, whilst he was negotiating for the loan from them, just exactly what his business there was, and the full and precise nature of it. But said Chisholm testified that whilst he did meet said Crawford at that place, that said Crawford only told him, Chisholm, that he was negotiating with Drexel, Morgan & Co. to get money to pay the indebtedness due to your petitioner, but that he, said Crawford, did not refer to any negotiation on the pledge of the bonds of said railway company in any way whatsoever. And your petitioners submit that, under the facts in the record in this cause, and without any reference to the credibility of the two witnesses, inasmuch as no evidence whatever has been introduced, showing that your petitioner, or any of its officers or agents knew anything about the construction contract between said Crawford and the railway company, and that the testimony of said Crawford was introduced by the appellant, by way of estoppel upon your petitioner, that under the rules of courts of equity the testimony of one witness affirming the fact, and the other denying the same, such fact was not proven, and that the whole record shows that such was not the truth.

*Second.* It further avers that there is manifest error in the opinion and judgment of this court in this: In holding that the lien of the bonds of appellant upon the proceeds of the sale of said railroad property is superior to the claim of your petitioner, for the just indebtedness due to it. And your petitioner shows that its indebtedness had wholly accrued on the 5th of December 1881; and that the first million of dollars of bonds delivered to Henry Crawford were not delivered until after that time; that at the time the bonds were so delivered, in the latter part of December, 1881, to said Crawford, he, by his own testimony had been furnishing money and making contracts for material and labor for the construction of the road, without any contract for repayment thereof with the company. As stated by him under oath, when being examined as a witness for appellant:

"I went on and furnished the money at first, simply because I was acting under the impression that I practically owned that piece of property, and while I was not formally in control of it, yet that whenever I desired to control it, that the control was obtainable."

And your petitioner submits that under such circumstances, the said Crawford had no right in equity to obtain a first lien upon said railroad property, by procuring the bonds, secured by mortgage thereon, as against your petitioner's just claims against said railroad company.

*Third.* Your petitioner avers that there is manifest error in the judgment and opinion of this court in decreeing that your petitioner shall not be allowed any part of the proceeds derived from the sale of said railroad property, in this: That by the memorandum agreement between the said railway company and Henry Crawford, as to applying proceeds of the issue of the million dollars of bonds delivered to said Crawford's representative by William Foster, as president of said railroad company, in the fourth clause thereof, it was provided, that said Crawford should furnish the necessary amount of money to pay the debts contracted since the first of July, 1881, included in which, was the debt due your petitioner, and unpaid at that time.

Wherefore your petitioner humbly prays this court that a rehearing may be granted to it of the judgment and opinion of this court, pronounced against it, and that it may have such further and other relief as to your Honors shall seem meet.

Volney Q. Irwin also filed the following separate petition:

And your petitioner, Volney Q. Irwin, severally petitions the court for a rehearing of the judgment and opinion rendered against him by this court in the above cause, and as grounds for such rehearing respectfully shows:

*First.* Your petitioner avers that there is manifest error in the opinion and decree of this court in the above cause in this: In holding that your petitioner had no lien upon the said railroad property, nor upon the proceeds of the sale thereof, for the reason that the mortgages securing said bonds were valid liens thereon, as against your petitioner, for the reasons and because of the facts as stated in said opinion. But your petitioner respectfully shows that he had a special ground of lien for the amount of his claim against the said railroad property prior to the mortgages thereon, the facts of which are not stated in the opinion filed herein, nor any specific judgment or conclusion of the court given thereon, in said opinion.

That your petitioner, by virtue of the lien laws of the state of Indiana, recovered a judgment for the amount of his said claim against said railway company, which is admitted to have been prior to the lien of said mortgages. That by virtue of said judgment and lien a sale of a section of said railroad, extending through the county where said judgment was rendered, was made for the sum of $500, from which redemption was attempted to be made, by John C. New, trustee in the mortgages; and your petitioner claimed in the brief filed by his counsel in this case, that said redemption did not destroy the lien of his judgment, at least for the said amount of over $11,000: 1st. Because the redemption laws of the state of Indiana were wholly inapplicable to such a case; and 2d, that John C. New, the trustee in said mortgage (who attempted to redeem from said judgment) never complied with the redemption law of Indiana so as to destroy the lien of your petitioner.

And your petitioner respectfully submits to the court that his said judgment was and continued to be a lien upon said railroad, prior to the lien of said mortgages, securing the bonds of said appellant, and that he was and is entitled, by reason thereof, to be paid the amount of his said claim, as decreed by the Circuit Court.

Wherefore your petitioner humbly prays this Honorable Court that a rehearing of said cause, as against him, may be had, and that such other order or decree may be made therein as to your Honors shall seem meet.

The Pittsburg Bessemer Steel Company (Limited) also filed the following separate petition:

And your petitioner, the Pittsburg Bessemer Steel Company (Limited), for itself, separately, petitions this Honorable Court for a rehearing of the judgment which has been entered by this court against it in this cause, as contained in the opinion filed herein, and for a rehearing of said cause as to it; and it states the following special grounds for such rehearing:

*First.* Your petitioner submits that there is manifest error in the opinion and decree of this court in the above cause in this: In deciding and holding that said cause should be reversed as to your petitioner for error of the Circuit Court contained in the sixth paragraph of the interlocutory decree of the Circuit Court of February 16, 1886; whereas your petitioner maintains and submits, that under the issue made by the intervening petition of your petitioner and the evidence relative thereto in the record, the final decree of the Circuit Court of October 9, 1886, was as to your petitioner a just and proper decree, free from error and in consonance with all legal and equitable principles.

*Second.* Your petitioner submits that there is manifest error in the opinion and decree of this court in the above cause in this: In deciding and holding that the principles and rules stated in the opinion of the court are controlling in respect of the issues and grounds upon which your petitioner claimed and insisted that there are, in the above cause, special equities resting with your petitioner in virtue of which it was entitled to

preference of payment out of the fund in the registry of the Circuit Court, whereas your petitioner maintains and submits that irrespective of the validity of the mortgage and bonds of the Chicago and Great Southern Railway Company, and conceding the fact that the appellant, Henry H. Porter, was a *bona fide* purchaser of said bonds for value, and the further fact that said mortgage and bonds were executed, and said mortgage was recorded and $1,000,000 of said bonds were issued before your petitioner's contract for the sale of rails to said railway company was consummated, and the further fact that the railroad of said railway company was in process of construction at the time of the consummation of said contract for the sale of said rails, still said Henry H. Porter, as mortgagee, took and held a lien under said mortgage upon the rails sold by your petitioner to said railway company, that was subordinate and junior to the lien of your petitioner thereon, which was secured by the retention of physical possession of said rails by your petitioner, until without its consent or knowledge, said physical possession of said rails was fraudulently taken from it by said railway company, and your petitioner's said lien should in equity be preserved and protected.

Wherefore, your petitioner respectfully prays that as to it a rehearing in this cause may be granted, and such further order and decree made as to your Honors shall seem meet.

The Smith Bridge Company also filed the following petition:

Your petitioner, the Smith Bridge Company, for itself, separately, petitions this Honorable Court for a rehearing of the judgment which has been entered in this cause as contained in the opinion filed herein, and for a rehearing of said cause as to it; and it states the following grounds for such rehearing:

That in its intervening petition, filed in this cause in the Circuit Court, no issue was made in regard to the validity of the bonds held by the complainant Porter, nor were the said bonds in any manner contested by your petitioner in its petition, but your petitioner has relied solely upon the special equities of its claim. And your petitioner may now concede

that the opinion and decree of this court, as announced, is correct, so far as it holds that said appellant's bonds are valid; and still your petitioner avers that in holding that said appellant's bonds are prior and superior to the equity of your petitioner's lien, there is manifest error in said opinion and decree, for the following reasons:

*First.* Your petitioner avers that there never was any delivery of the said bridges or bridge material by your petitioner to said Chicago and Great Southern Railroad Company. The contract between your petitioner and said railroad company required the bridges to be completed where they now stand; and that upon completion your petitioner was to retain the possession and title until payment was made in full. The evidence (p. 823) shows that your petitioner has never consented to any delivery. And your petitioner, therefore, avers that in holding said bonds of appellant to be a prior lien on said bridges to the claims of your petitioner, there is manifest error.

*Second.* Your petitioner avers that at the time the appellant, Porter, purchased said bonds, and long prior thereto, he had full knowledge and notice of your petitioner's equities under said contract and lien; and that the First National Bank of Chicago likewise had such knowledge and notice. (Evidence, pages 911, 925, 926.) And your petitioner therefore avers that there is error in the decree of this court in holding that said Porter was an innocent holder of said bonds as against your petitioner's claim.

*Third.* Your petitioner avers that the syndicate agreement, so called, by which the appellant, Porter, became the purchaser and owner of said bonds, recognized the equities of your petitioner's claim, and especially provided for its payment (Record, page 912); that the Circuit Court having found that your petitioner's claim was paramount and prior to said bonds, the provisions of said syndicate agreement for the payment of your petitioner's claim then became operative and conclusive. And your petitioner avers that there is error in the decree of this court in holding that the said bonds in the hands of said Porter are a superior lien to your petitioner's

claim, notwithstanding the provisions of said agreement to pay the same.

*Fourth.* There is error in said opinion and decree in holding that your petitioner had any knowledge of the loan from Drexel, Morgan & Co.; or knew that they were receiving money obtained from a pledge of the bonds to Drexel, Morgan & Co.

Wherefore, your petitioner respectfully prays that as to it a rehearing in this cause may be granted, and such further order and decree made as to your Honors shall seem meet.

And your petitioner will ever pray, &c.

Briefs in support of these petitions were filed by the following counsel.

*Mr. J. S. Cooper*, *Mr. A. C. Harris*, and *Mr. W. H. Calkins* for all the petitioners.

*Mr. E. W. Tolerton* for the Smith Bridge Company.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The appellees in this case petition for a rehearing. The case was decided at the present term, and is reported in 120 U. S. 649. The application for a rehearing covers all the grounds discussed in the opinion of this court, and others which, though not touched upor in the opinion, were fully considered by the court in arriving at its judgment. Upon all the questions covered by the opinion we adhere to our conclusions, and we see nothing in the special grounds taken in regard to the cases of some of the appellees to warrant a different result from that arrived at on the former hearing. It is proper, however, to notice two of the grounds urged in respect to two of the appellees.

The appellee Irwin claims that, by virtue of the lien laws of the state of Indiana, he recovered a judgment for the amount of his claim against the railway company, which became a lien prior to the lien of the mortgages, and that, notwithstanding an attempted redemption by John C. New, the trustee in the

mortgages, the lien of the judgment remained good (1) because the redemption laws of the state of Indiana did not apply to the case; and (2) because New did not comply with such laws in regard to redemption, in such manner as to destroy the lien of the judgment. It is contended on the part of Irwin, that the Indiana statute does not authorize a redemption from a sale of railroad property; that New had no lien on the property sold; and that a redemption redeems simply from the sale and does not discharge the property from the lien, but only postpones any balance remaining due on the lien to the amount paid for redemption.

The decree of the Circuit Court of Warren County, made in April, 1884, in the suit to foreclose the lien, brought by Irwin, forecloses the lien for $11,815.70, as a lien on the line of the railway for a certain distance in Warren County. In June, 1884, execution was issued for a sale, and on the 12th of July, 1884, the property was sold by the sheriff to Irwin for $500, and a certificate of purchase was issued to Irwin, stating that he would be entitled to a deed of the property in fee simple in one year from the 12th of July, 1884, if the same should not be redeemed by the defendant, or any other person entitled thereto, paying the purchase money, with interest at eight per cent per annum, before the expiration of the one year. On the 10th of July, 1885, and within the year, New, as trustee in the mortgages, paid to the clerk of the Circuit Court $539.78, in redemption of the property so sold, that being the amount necessary at that date to redeem the property.

It is very clear, that, by the sale of the property on the execution, the lien of Irwin upon the property was exhausted, as a lien superior to the mortgages, upon that part of the railway which was covered by such superior lien. The property redeemed by New was the property sold under the decree in favor of Irwin. The redemption by New did not have the effect to restore the lien of the decree upon the property sold and redeemed. The redemption was not made by the judgment debtor, so as to vacate the sale and reinstate the lien for the balance of the judgment which the purchase money of the sale did not pay. The redemption was made by another and

a subsequent lien holder, who redeemed for his own benefit and the benefit of those for whom he was trustee, and not for the benefit of Irwin.

This we understand to be the meaning and effect of the statute of Indiana in regard to redemption. Rev. Stat. of Indiana of 1881, §§ 770 to 776. We are not referred to any decisions of the courts of Indiana, giving any other construction to these provisions. Section 774 gives the right to redeem to a person having a lien otherwise than by judgment. The statute gives no right to Irwin to redeem from New. The sale of the property on the foreclosure of the mortgages given to New, subsequently to the redemption by New, conveyed the redeemed property to its purchaser on the sale, free and discharged from the lien under the decree in favor of Irwin, on which the sale redeemed from was made, and none of the proceeds of the sale on the foreclosure of the mortgages given to New can be applied to pay the unpaid portion of Irwin's decree. If the grading, embankment and excavation done by Irwin was subject to a sale on execution under his judgment, the redemption law applies to the case, and was complied with by New.

It is claimed on behalf of the Smith Bridge Company, that the contracts between it and the railway company, for the construction of the bridges, provided that the bridges should remain the property of the Smith Bridge Company until the contract price for them should have been fully paid, and that, in default of such payment, the Smith Bridge Company should have the right to remove the bridges and bridge material; that the mortgages became a lien on the bridges only as the bridges became the rightful and legal property of the railway company; that Porter, before he purchased the bonds, had notice of the equities of the Smith Bridge Company growing out of their contracts; and that the First National Bank of Chicago had like notice before it acquired any interest in the bonds. The contracts of the Smith Bridge Company were made in October, 1882, and in July, 1883. The bonds were pledged to Dull & McCormick in January, 1882, and passed from them to Drexel, Morgan & Co., in January, 1883. The

bridges became a part of the permanent structure of the railroad, as much so as the rails laid upon the bridges or upon the railroad outside of the bridges. Whatever is the rule applicable to locomotives and cars, and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company, covering after acquired property, it is well settled, in the decisions of this court, that rails and other articles which become affixed to and a part of. a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of *bona fide* creditors, as against any contract between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case. *Dunham* v. *Railway Co.,* 1 Wall. 254; *Galveston Railroad* v. *Cowdrey,* 11 Wall. 459, 480, 482; *United States* v. *New Orleans Railroad,* 12 Wall. 362, 365; *Dillon* v. *Barnard,* 21 Wall. 430, 440; *Fosdick* v. *Schall,* 99 U. S. 235, 251.

In regard to the alleged notice to Porter and to the First National Bank of Chicago, no such notice was given until after Dull & McCormick, and Drexel, Morgan & Co. had acquired their rights as *bona fide* holders of the bonds; and Porter, by purchasing the bonds from Drexel, Morgan & Co., acquired all their rights and those of Dull & McCormick, as shown in the former opinion, and those rights were free in their hands from any notice of any claim of the Smith Bridge Company. *Commissioners* v. *Bolles,* 94 U. S. 104, 109; *Montclair* v. *Ramsdell,* 107 U. S. 147.

An error was committed in the former opinion, p. 657, in stating that each of the five appellees knew of the pledge of the bonds to Drexel, Morgan & Co. for the loan, and knew that they were getting a part of the money loaned by Drexel, Morgan & Co. This was not true in regard to all of the five appellees, but was true in regard to only some of them. The error does not affect the result on the merits.

*The application for a rehearing is denied.*