## NEW MEXICO *v.* UNITED STATES TRUST COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 106.   Argued October 25, 26, 1898. — Decided December 5, 1898.

The provision in Sec. 2 of the act of July 27, 1866, c. 278, 14 Stat. 292, 294, which exempts from taxation within the Territories of the United States, the right of way granted by the act to the Atlantic & Pacific Railroad Company, operates to exempt from such taxation the land itself to the extent to which it is made by the act subject to such right of way and all structures erected thereon.

In so deciding the court does not question the rule of construction declared in *Vicksburg, Shreveport & Pacific Railroad* v. *Thomas*, 116 U. S. 665, and followed in *Yazoo &c. Railroad* v. *Thomas*, 132 U. S. 174; *Wilmington & Weldon Railroad* v. *Alsbrook*, 146 U. S. 279; *Keokuk & Western Railroad* v. *Missouri*, 152 U. S. 301; *Norfolk & Western Railroad* v. *Pendleton*, 156 U. S. 667; and *Covington &c. Turnpike Co.* v. *Sandford*, 169 U. S. 578, but rests the present decision simply on the terms of the statute.

THIS case was begun by the filing in the district court for Bernalillo County, in the Territory of New Mexico, by the District Attorney for the Territory, of an intervening petition on behalf of the Territory praying for an order against the receiver of the Atlantic and Pacific Railroad Company, requiring him to pay the amount of taxes claimed to be due upon the improvements on the right of way of said railroad company in the county of Bernalillo, and upon station houses and other improvements at seven different stations in said county. The taxes claimed were for the years 1893, 1894 and 1895.

The case was submitted upon the following agreed statement of facts:

"For the purposes of the hearing to be had upon the intervening petition of the Territory of New Mexico, in the above-entitled cause, and answers thereto of C. W. Smith, the receiver of the Atlantic and Pacific Railroad Company, and the United States Trust Company, it is hereby stipulated and agreed, by

and between said above-named parties, that the following facts shall be accepted and received by the judge or court in determining the questions involved as the facts in the case.

"That on and prior to January 1, 1892, the Atlantic and Pacific Railroad Company, under the provisions of its charter, definitely located its line of road and right of way through Bernalillo County, which said right of way so located involved all necessary grounds for station buildings, work shops, depots, machine shops, switches, side tracks, turn tables and water stations. That upon said right of way so located through the city of Albuquerque, in said county, was definitely located necessary ground for station buildings, work shops, depots, machine shops, side tracks, turn tables and water stations; and there was also located upon said right of way at the Atlantic and Pacific Junction, at Chaves or Mitchell, at Coolidge, at Wingate, at Gallup and at Manuelito, necessary ground for station buildings, work shops, depots, machine shops, switches, side tracks, turn tables and water stations.

"That thereafterwards and prior to 1893 there was built and constructed upon said right of way by the Atlantic and Pacific Railroad Company from a point of junction with the Atchison, Topeka and Santa Fé Railroad Company at Isleta, fifteen miles south of Albuquerque, a railroad along said right of way, from said junction point to the Colorado River, in the Territory of Arizona; that the Atlantic and Pacific Railroad Company has, under an agreement with the Atchison, Topeka and Santa Fé Railroad Company, occupied and used the tracks of the last named company between the junction of the two railroads at Isleta and the city of Albuquerque as and for the railroad of the Atlantic and Pacific Railroad Company to the extent that its business required the use and operation of such railroad for itself; or, in other words, under contract between the two companies the railroad of the Atchison, Topeka and Santa Fé Railroad Company through the city of Albuquerque to the junction at Isleta, a distance of about fifteen miles, is jointly used by the two railroad companies; said railroad running through the reservations for machine shops, etc., aforesaid, of the Atlantic and Pacific Railroad Company at

Albuquerque; that the right of way so located by the Atlantic and Pacific Railroad Company and upon which it built its railroad, as aforesaid, runs through Bernalillo County, and is situated in Bernalillo County as follows:

"Commencing at the A. & P. Junction referred to, it runs thence in a westerly direction 4 miles 3780 feet to the division line between Bernalillo County and Valencia County, and then after crossing a portion of Valencia County at a point known as Station 5247 it again runs through Bernalillo County 68 miles and 44 feet to the west line of the county of Bernalillo, being the west line of the Territory of New Mexico; which said right of way, outside of the reservation for station grounds, etc., was located, and is of the width of 200 feet, being 100 feet on each side of the centre of the railroad track located thereon.

"That in due time the former receivers of the property of the Atlantic and Pacific Railroad Company appointed by this court returned to the assessor of Bernalillo County as property belonging to said railroad company, taxable in said county, certain property, which was and is described in said returns as follows, to wit:

"List of personal property belonging to, claimed by, or in the possession or under the control of the receivers of the Atlantic and Pacific Railroad Company (Western Division), a corporation created by act of Congress, having its principal place of business at Albuquerque, New Mexico.

"The line of its road running through the counties of Bernalillo and Valencia in said Territory of New Mexico; thence through the counties of Apache, Navajo, Coconino, Yavapai and Mohave, in the Territory of Arizona, to the eastern boundary line of the State of California; thence through the counties of San Bernardino and Kern, in said State, to the western end of said line, and its terminus at Mojave, in said county of Kern, a total distance of 805.86 miles, the total mileage of said line owned by said company in said Territory of New Mexico being 166.6, of which 73.142 are in Bernalillo County, and 93.458 miles are in Valencia County.

"And the receivers of the property of said company,

make a full report of all of its personal property as follows, to wit:

| | |
|---|---:|
| All the locomotives, passenger coaches, express and mail cars, cabooses, box, flat and coal cars, push cars, hand cars and all other equipments owned, possessed or used by said receivers or said company upon the entire line aforesaid.............. | $452,960 |
| Track tools, and all other personal property not having its situs or domicil in some other State or Territory, including office and station furniture, law library, books, stationery, supplies and material, etc., at Albuquerque, Mitchell, Coolidge, Wingate, Gallup and Manuelito.................... | 78,000 |
| Personal property within the city limits of Albuquerque ................................... | 200,000 |
| Personal property within the city limits of Gallup... | 5,000 |

"That the above and foregoing was all the property returned for taxation in Bernalillo County by said receivers or by the railroad company itself; and that the same was made as the assignment of the property of said company subject to taxation in said county for the year A.D. 1895; that the county assessor of Bernalillo County in the year 1895, under the direction of the board of county commissioners of said county, placed on the assessment roll an assessment of property against the Atlantic and Pacific Railroad Company for the year 1893. A true and correct copy of the assessment roll showing such assessment so placed thereon is filed with this as a part hereof, and as 'Exhibit 1,' which said exhibit shows the taxes levied, together with the values and penalties. That at the time the said assessor, under the instructions of said board, placed upon said assessment roll certain property claimed to be taxable property belonging to said railroad company, which was omitted from taxation for the year 1894. A true and correct copy of the assessment so made is shown by 'Exhibit 2,' herewith filed and made a part hereof.

"That the said assessor at the same time placed upon said

assessment roll property claimed to have been omitted and belonging to said company for the year 1895, a true and correct copy of which said assessment roll, with said last-named assessment placed upon it, is shown by 'Exhibit 3,' hereto attached and made a part hereof and filed herewith.

"That these exhibits show precisely the descriptions of property entered by the assessor, the penalties added, and the values and also the taxes levied thereon.   'Exhibit 3' also shows the description of the property as returned by the receivers.

"That all the property so placed upon the assessment roll by the assessor, outside of that returned by the receivers, was placed upon said assessment roll without the knowledge or consent of the receivers, or .of said railroad company; that the entire property placed upon the assessment roll by said assessor, outside of the property returned by the receivers, constituted and constitutes an actual part and portion of the roadbed and railroad track thereon situated on the right of way of the Atlantic and Pacific Railroad Company in Bernalillo County, in the Territory of New Mexico, and constitutes the railroad used and occupied by the Atlantic and Pacific Railroad Company under its charter and in accordance with the provisions thereof; and the machine shops, station buildings, water tanks, section houses and other buildings of like character connected with and a part of the machinery used in the operation of said railroad; that each and every item of property described in the assessments so placed upon the said assessment roll, outside of the property returned by the receivers, is property that is actually and permanently attached to the right of way and station grounds of the Atlantic and Pacific Railroad Company, and constitutes an actual part and portion of the superstructure placed upon said right of way by said railroad company for its railroad and for its machine shops, turn tables, side tracks, switches, water tanks, station buildings and other buildings of the same class and character actually used and needed in the operation of said railroad, and that no part of the same was, at the time of the placing of said assessment upon said assessment rolls by the

assessors, detached from the actual right of way and station grounds of said railroad company ; but, on the contrary, was firmly affixed thereto ; that it was described as it was by the assessor in placing the same upon the assessment roll for the purpose of escaping the exemption from taxation contained in the second section of the act of Congress approved July 27, 1866, known as the charter of the Atlantic and Pacific Railroad Company, the assessor desiring to assess everything placed on the right of way separate from the right of way, no matter how permanently attached and affixed to the right of way.

"That during the year 1893 there were no receivers in possession of said property, and that said railroad was being operated by the railroad company itself, and, if any property was omitted to be returned for taxation which ought to have been returned to the assessor of Bernalillo County, it was the fault and neglect of the railroad company itself, and not the fault and neglect of the receivers afterwards appointed.

"That at Albuquerque, upon the reservations and station grounds, there were situated the largest machine shops of the said railroad company, the general office building and such buildings as pertain to the headquarters of a railroad company ; said buildings and reservation constitute the headquarters of the Western Division of the Atlantic and Pacific Railroad Company, and, since the appointment of receivers, of the receivers operating the same.

"That the assessor, in placing each of these three assessments upon the assessment rolls as stated, added to the actual value of the property one fourth of such value, as a penalty for the failure on the part of the receiver to return such property for taxation.

"That in 1893 the railroad company, and in 1894 and 1895 the receivers, omitted all property that was firmly and fixedly attached to the right of way of said railroad company and to station grounds, under the honest belief that the same constituted a part of the right of way and was exempt from taxation."

Subsequently, the case came on to be heard, upon the intervening petition of the Territory and the answer thereto

of the United States Trust Company and of the receiver, C. W. Smith, and the agreed statement of facts. Upon the hearing the judge of the district court ordered the receiver to pay to the treasurer of the county of Bernalillo the sum of forty-three thousand two hundred and fifty-four dollars and seventy cents ($43,254.70), the amount ascertained by a special master to be the aggregate of the taxes levied upon the additional assessments and penalties. An appeal was taken from this order by the United States Trust Company, and also by the receiver, C. W. Smith, who had obtained from the court permission to take such an appeal. The order appealed from was reversed upon hearing before the Supreme Court of the Territory, the court determining that the additional assessments placed upon the rolls were illegal and void. An application was made for a rehearing, which the court denied, and an appeal was taken to this court.

The sections of the act of July 27, 1866, c. 278, 14 Stat. 292, with which we are concerned, are inserted in the margin;[1] also sections 2807, 2822, 2834 and 2835 of the

---

[1] SEC. 1. . . . And said corporation is hereby authorized and empowered to lay out, locate and construct, furnish, maintain and enjoy a continuous railroad and telegraph line, with the appurtenances, namely, beginning at or near the town of Springfield, in the State of Missouri, thence to the western boundary line of said State, and thence by the most eligible railroad route as shall be determined by said company to a point on the Canadian River; thence to the town of Albuquerque, on the River Del Norte, and thence, by way of the Agua Frio or other suitable pass, to the head waters of the Colorado Chiquito, and thence along the thirty-fifth parallel of latitude as near as may be found most suitable for a railway route to the Colorado River, at such point as may be selected by said company for crossing; thence by the most practicable and eligible route to the Pacific. The said company shall have the right to construct a branch from the point at which the road strikes the Canadian River eastwardly, along the most suitable route as selected, to a point in the western boundary line of Arkansas at or near the town of Van Buren. And the said company is hereby vested with all the powers, privileges and immunities necessary to carry into effect the purposes of this act as herein set forth. * * *

SEC. 2. *And be it further enacted*, That the right of way through the public lands be, and the same is hereby, granted to the said Atlantic and Pacific Railroad Company, its successors and assigns, for the construction

of a railroad and telegraph as proposed; and the right, power and authority is hereby given to said corporation to take from the public lands adjacent to the line of said road material of earth, stone, timber and so forth, for the construction thereof. Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station buildings, work shops, depots, machine shops, switches, side tracks, turn tables and water stations, and the right of way shall be exempt from taxation within the Territories of the United States.   *   *   *

SEC. 3. *And be it further enacted,* That there be, and hereby is, granted to the Atlantic and Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific Coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war and public stores, over the route of said line of railway and its branches, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt through the Territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any State, and whenever, on the line thereof, the United States have full title, not reserved, sold, granted or otherwise appropriated, and free from preëmption or other claims or rights, at the time the line of said road is designated by a plat thereof, filed in the office of the Commissioner of the General Land Office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or preëmpted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections and not including the reserved numbers.   *   *   *

SEC. 5. *And be it further enacted,* That said Atlantic and Pacific Railroad shall be constructed in a substantial and workmanlike manner, with all the necessary draws, culverts, bridges, viaducts, crossings, turnouts, stations and watering places, and all other appurtenances, including furniture and rolling stock, equal in all respects to railroads of the first class when prepared for business, with rails of the best quality, manufactured from American iron. And a uniform gauge shall be established throughout the entire length of the road. And there shall be constructed a telegraph line, of the most substantial and approved description, to be operated along the entire line.   *   *   *

SEC. 7. *And be it further enacted,* That the said Atlantic and Pacific Railroad Company be, and is hereby, authorized and empowered to enter upon, purchase, take and hold any lands or premises that may be necessary and proper for the construction and working of said road not exceeding in width one hundred feet on each side of the line of·its railroad, unless a greater width be required for the purpose of excavation or embankment; and also any lands or premises that may be necessary and proper for turn-

outs, standing places for cars, depots, station houses or any other structures required in the construction and working of said road. And the said company shall have the right to cut and remove trees and other material that might, by falling, encumber its roadbed, though standing or being more than two hundred feet from the line of said road. And in case the owner of such lands or premises and the said company cannot agree as to the value of the premises taken, or to be taken, for the use of said road, the value thereof shall be determined by the appraisal of three disinterested commissioners who may be appointed upon application by either party to any court of record in any of the territories in which the lands or premises to be taken lie; and said commissioners in their assessment of damages shall appraise such premises at what would have been the value thereof if the road had not been built. And upon return into court of such appraisement, and upon the payment into the same of the estimated value of the premises taken for the use and benefit of the owner thereof, said premises shall be deemed to be taken by said company, which shall thereby acquire full title to the same for the purposes aforesaid. * * *

SEC. 8. *And be it further enacted,* That each and every grant, right and privilege herein are so made and given to and accepted by said Atlantic and Pacific Railroad Company, upon and subject to the following conditions, namely: That the said company shall commence the work on said road within two years from the approval of this act by the president, and shall complete not less than fifty miles per year after the second year, and shall construct, equip, furnish and complete the main line of the whole road by the fourth day of July, Anno Domini eighteen hundred and seventy-eight.

SEC. 9. *And be it further enacted,* That the United States make the several conditional grants herein, and that the said Atlantic and Pacific Railroad Company accept the same, upon the further condition that if the said company make any breach of the conditions hereof, and allow the same to continue for upwards of one year, then, in such case, at any time hereafter, the United States may do any and all acts and things which may be needful and necessary to insure a speedy completion of the said road.

SEC. 10. *And be it further enacted,* That all people of the United States shall have the right to subscribe to the stock of the Atlantic and Pacific Railroad Company until the whole capital named in this act of incorporation is taken up by complying with the terms of subscription.

SEC. 11. *And be it further enacted,* That said Atlantic and Pacific Railroad, or any part thereof, shall be a post route and military road, subject to the use of the United States for postal, military, naval and all other government service, and also subject to such regulations as Congress may impose restricting the charges for such government transportation.

\*      \*      \*      \*      \*      \*      \*

SEC. 20. *And be it further enacted,* That the better to accomplish the object of this act, namely, to promote the public interest and welfare by the construction of said railroad and telegraph line, and keeping the same in working order, and to secure to the government at all times, but particularly in time of war, the use and benefits of the same for postal, military and other

Compiled Laws of 1884 of New Mexico relating to taxation.[1]

*Mr. F. W. Clancy* for appellant. *Mr. Felix H. Lester* and *Mr. Thomas N. Wilkerson* were on his brief.

---

purposes, Congress may at any time, having due regard for the rights of said Atlantic and Pacific Railroad Company, add to, alter, amend or repeal this act.

[1] TITLE 41. CHAPTER 1.

2807. The terms mentioned in this section are employed throughout this chapter in the sense herein defined:

First. The term "real estate" includes all lands within the territory to which title or right to title has been acquired; all mines, minerals and quarries, in and under the land, and all rights and privileges appertaining thereto and improvements.

Second. The term "improvements" includes all buildings, structures, fixtures and fences erected upon or fixed to land, whether title has been acquired to said land or not.

Third. The term "personal property" includes everything which is subject of ownership, not included within the term "real estate."

Fourth. The term "credit" includes every claim and demand for money, or other valuable thing, and every annuity or sums of money receivable at stated periods; but pensions from the United States and salaries, or payments expected, for services to be rendered are not included in the above term.

2822. The assessor is required, between the first day in March and the first day in May of each year, to ascertain the names of all taxable inhabitants and all property in his county subject to taxation. To this end he shall visit each precinct in the county, and exact from each person a statement in writing, or list, showing separately:

First. All property belonging to, claimed by, or in the possession or under the control or management of such person, or any firm of which such person is a member, or any corporation of which such person is president, secretary, cashier or managing agent.

Second. The county in which such property is situated, or in which it is liable to taxation.

Third. A description by legal subdivisions, or otherwise, sufficient to identify it, of all real estate of such person and a detailed statement of his personal property, including average value of merchandise for the year ending March 1st; amount of capital employed in manufactures; number of horses, mules, cattle, sheep, swine and other animals; of carriages and vehicles of every description; jewellery, gold and silver plate; musical instruments; household furniture; moneys and credits; shares of stock of any corporation or company; and all other property not herein enumerated, with the value of the different classes of property in detail.

*Mr. Victor Morawetz* and *Mr. C. N. Sterry* for appellees. *Mr. E. D. Kenna* and *Mr. Robert Dunlap* were on their brief.

Mr. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

The right of way is granted to the extent of two hundred feet on each side of the railroad, including necessary grounds for station buildings, workshops, etc. What, then, is meant by the phrase "the right of way"? A mere right of passage, says appellant. *Per contra*, appellee contends that the fee was granted, or, if not granted, that such a tangible and corporeal property was granted, that all that was attached to it became part of it and partook of its exemption from taxation.

To support its contention, appellant urges the technical meaning of the phrase "right of way," and claims that the primary presumption is that it was used in its technical sense. Undoubtedly that is the presumption, but such presumption must yield to an opposing context, and the intention of the legislature otherwise indicated. Examining the statute, we find that whatever is granted is exactly measured as a physical thing — not as an abstract right. It is to be two hundred feet wide, and to be carefully broadened so as to include grounds for the superstructures indispensable to the railroad.

The phrase "right of way," besides, does not necessarily mean the right of passage merely. Obviously, it may mean one thing in a grant to a natural person for private purposes

---

2834. On or before the first Monday in March, annually, the assessor shall make out an assessment book or roll, with appropriate headings, alphabetically arranged, in which must be listed all the property in the county subject to taxation. Such book shall contain the names of the persons to whom the property is assessed, with the several species of property and the value as hereinbefore indicated, with the columns of numbers and values as given by the person making the return, as fixed by the assessor, and as decided by the county commissioners. At the end of such book or roll all property assessed to " unknown owners " shall be entered.

2835. Each tract of land shall be valued and assessed separately except when one or more adjoining tracts are returned by the same person, in which case they may be valued and assessed together.

and another thing in a grant to a railroad for public purposes — as different as the purposes and uses and necessities respectively are.

In *Keener* v. *Union Pacific Railway*, 31 Fed. Rep. 126, 128, Mr. Justice Brewer defined the words "right of way" as follows: "The term 'right of way' has a twofold significance. It sometimes is used to mean the mere intangible right to cross; a right of crossing; a right of way. It is often used to otherwise indicate that strip which the railroad company appropriates for its use, and upon which it builds its roadbed."

Mr. Justice Blatchford said in *Joy* v. *St. Louis*, 138 U. S. 1, 44: "Now the term 'right of way' has a twofold signification. It is sometimes used to describe a right belonging to a party, a right of passage over any tract; *and it is also used to describe that strip* of land which railroad companies take upon which to construct their roadbed." That is, the land itself — not a right of passage over it. So this court in *Missouri, Kansas & Texas Railway* v. *Roberts*, 152 U. S. 114, passing on a grant to one of the branches of the Union Pacific Railway Company of a right of way two hundred feet wide, decided that it conveyed the fee. The effect of this decision is attempted to be avoided by saying that the distinction between an easement and the fee was not raised. The action was ejectment, and was brought in Kansas, and under the law of that State title could be tried in ejectment. Title was asserted by Roberts, who was plaintiff in the state court, and this court evidently considered it involved in the case. The language of Mr. Justice Field, who delivered the opinion of the court, would be unaccountable else. The difference between an easement and the fee would not have escaped his attention and that of the whole court, with the inevitable result of committing it to the consequences which might depend upon such difference.

Washburn in his work on Easements, on p. 10, says: "Whether the thing granted be an easement in land or the land itself may depend upon the nature and use of the thing granted." To sustain this view the learned author cites *Jamaica Pond Aqueduct Corporation* v. *Chandler*, 9 Allen, 159. In that case the court said : "Whenever a grant is made of a

right or easement in lands which fall within the class some-
times described as ' non-continuous ' — that is, where the use
of the premises by the grantee for the purpose designated in
the deed will be only intermittent and occasional, and does
not embrace the entire beneficial occupation and improve-
ment of the land — the reasonable interpretation is, that an
easement in the soil, and not the fee, is intended to be con-
veyed. Among the most prominent of this class of easements
is a way." An ordinary way, of course, the court meant, one
the use of which would be non-continuous — only intermittent
and occasional; but a way not of that character, whose use
would be continuous, not occasional, and which would embrace
the entire beneficial occupation and improvement of the land,
might require the fee for its enjoyment — certainly would
require more than a mere right of passage. " Unlike the use
of a private way — that is, discontinuous — the use of land
condemned by a railroad company is perpetual and continu-
ous." *New York, Susquehanna & Western Railroad* v. *Trim-
mer,* 53 N. J. L. 1, 3.

But if it may not be insisted that the fee was granted, surely
more than an ordinary easement was granted, one having the
attributes of the fee, perpetuity and exclusive use and posses-
sion; also the remedies of the fee, and, like it, corporeal, not
incorporeal, property.

In *Smith* v. *Hall,* 72 N. W. Rep. 427, the Supreme Court
of Iowa says, speaking of the right of way of a railroad:
" The easement is not that spoken of in the old law books,
but is peculiar to the use of a railroad which is usually a per-
manent improvement, a perpetual highway of travel and
commerce, and will rarely be abandoned by non-user. The
exclusive use of the surface is acquired and damages are
assessed on the theory that the easements will be perpetual;
so that ordinarily the fee is of little or no value unless the
land is underlaid by a quarry or mine."

" The right acquired by the railroad company, though
technically an easement, yet requires for its enjoyment a use
of the land permanent in its nature and practically exclusive."
*Hazen* v. *Boston & Maine Railroad,* 2 Gray, 574, 580.

In *Southern Pacific* v. *Burr*, 86 California, 279, the Supreme Court of California sustained an action of ejectment for land constituting a part of the right of way granted to the Central Pacific Railroad by the act of July 1, 1862, by language similar to the grant in the case at bar.

Distinguishing the case from . *Wood* v. *Truckee Turnpike Co.*, 24 California, 474, in which it was held that " a road or right of way is an incorporeal hereditament, and ejectment is maintainable only for corporeal hereditaments," the court said : " We think that case plainly distinguishable from this. Here there was a special grant of a right of way two hundred feet in width on each side of the road. This grant is a conclusive determination of the reasonable and necessary quantity of land to be dedicated to the public use and it necessarily involves a right of possession in the grantee, and is inconsistent with any adverse possession of any part of the land embraced within the grant. It is true the strip of land now actually occupied by the roadbed and telegraph line may be only a small part of the four hundred feet granted, but this fact is of no consequence. The company may at some time want to use more land for side tracks, or other purposes, and it is entitled to have the land clear and unobstructed whenever it shall have occasion to do so." The court quoted and approved the views expressed in *Winona* v. *Huff*, 11 Minnesota, 119, that for a mere easement perhaps an action of ejectment would not lie ; but wherever a right of entry exists and the interest is tangible so that possession can be delivered, an action of ejectment will lie. The same distinction was made in *New York, Susquehanna & Western Railroad* v. *Trimmer*, *supra*, and the court said that if the interest of the railroad company was a naked right of way it would constitute no such right of possession of the land itself as would sustain the action ; for such a right would be an incorporeal one upon which there could be no entry, nor could possession of it be given under an *habere facias possessionem*. In this case it was held that the interest taken by the railroad was not an easement.

The interest granted by the statute to the Atlantic and

Pacific Railroad Company, therefore, is real estate of corporeal quality, and the principles of such apply. One of these, and an elemental one, is that whatever is erected upon it becomes part of it. There are exceptions to the principle, but as we are not concerned with them, we need not state them. Applications of the principle to railroads are illustrated by the decisions of this court and by those of other courts. As to rails put down against him from whom purchased, *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459; *United States* v. *New Orleans Railroad*, 12 Wall. 362; *Thompson* v. *White Water Valley Railroad*, 132 U. S. 68; even though the contract of purchase provided that the property should remain that of the vendor and he have a right to remove the same, *Porter* v. *Pittsburg Bessemer Steel Co.*, 122 U. S. 267, and cases cited; in determining the relation of the rails to the right of way, *Joy* v. *St. Louis*, 138 U. S. 1. In this case Mr. Justice Blatchford said: "The track cannot be separated from the right of way, the right of way being the principal thing and the track merely an incident. A right of way is of no particular use to a railroad without a superstructure and rails; the track is a necessary incident to the enjoyment of the right of way." See also *Palmer* v. *Forbes*, 23 Illinois, 301; *Hunt* v. *Bay State Iron Co.*, 97 Mass. 279; *New Haven* v. *Fair Haven & Westville Railroad*, 38 Conn. 422.

The principle has also illustrations in cases of taxation. *People* v. *Cassity*, 46 N. Y. 46; *Appeal Tax Court of Baltimore City* v. *The Baltimore Cemetery Co.*, 50 Maryland, 432; *Osborne* v. *Humphrey*, 7 Conn. 335; *Parker* v. *Redfield*, 10 Conn. 490; *Lehigh Coal & Navigation Co.* v. *Northampton County*, 8 W. & S. 334; *Chicago, Milwaukee & St. Paul Railway* v. *Crawford*, 48 Wisconsin, 666; *Richmond* v. *Richmond & Danville Railroad*, 21 Gratt. 604; *Mayor &c. of Baltimore* v. *Baltimore & Ohio Railroad*, 6 Gill. 288; *Osborn* v. *N. Y. & N. H. Railroad*, 40 Conn. 491; *Richmond & Danville Railroad* v. *Alabama*, 84 N. C. 504; *Worcester* v. *Western Railroad Corporation*, 4 Met. 564.

It is urged, however, that the rule of construction declared in *Vicksburg, Shreveport & Pacific Railroad* v. *Dennis*, 116

U. S. 665, and the cases there cited and approved, and repeated in *Gazoo &c. Railroad* v. *Thomas,* 132 U. S. 174; *Wilmington & Weldon Railroad* v. *Alsbrook,* 146 U. S. 279, 294; *Keokuk & Western Railroad* v. *Missouri,* 151 U. S. 301, 306; *Norfolk & Western Railroad* v. *Pendleton,* 156 U. S. 667, and *Covington &c. Turnpike Co.* v. *Sandford,* 164 U. S. 578, determines in favor of appellant's contention. That we do not think so is probably sufficiently indicated, but we cite the cases to preclude the thought that they have been overlooked, or that the rule announced by them is questioned. Indeed, we regard it as salutary, and not impaired by our decision which simply rests on the terms of the statute.

The decree is

*Affirmed.*