## ST. ANDREWS BAY LUMBER CO. v. DRUMMOND.

(Circuit Court of Appeals, Fifth Circuit.   May 7, 1924.)

### No. 4303.

I. **Fixtures ⊕⇒26—Rails in place when deed made held to become part of realty, and to revest on condition broken.**

Rails in place when deed to right of way was made were a part of the realty, which revested in grantor according to terms of deed, on abandonment of operation on the line.

2. **Fixtures ⊕⇒26—Rails held an accession to land, so that title would revest in grantor, when use of line abandoned.** •

Under contract for construction of railroad by grantor with rails furnished by grantee, and conveyance to grantee on condition of continued operation, rails *held* intended as an accession to the land, so that title to them would revest in grantor on abandonment of line.

In Error to the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Action at law by J. H. Drummond against the St. Andrews Bay Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John H. Carter, of Marianna, Fla. (Carter & Carter, of Marianna, Fla., on the brief), for plaintiff in error.

Francis B. Carter, of Pensacola, Fla. (J. E. D. Yonge and Dickson H. Carter, both of Pensacola, Fla., on the brief), for defendant in error.

WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. This is an action in trover to recover the value of a quantity of rails and accessories, consisting of fish plates, bolts, nuts, spikes, and switchstands, which the defendant, St. Andrews Bay Lumber Company, removed from a terminal or branch line railroad track.

In 1914 the railroad of the Atlanta & St. Andrews Bay Railway Company extended from Dothan, Ala., to St. Andrews Bay, at Panama City, Fla. The western boundary line of Panama City is also the eastern boundary line of the adjoining town of St. Andrews. The plaintiff, J. H. Drummond, was largely interested in St. Andrews, and in June, 1914, he entered into a written contract with A. B. Steele, who owned practically all the stock of the railway company, for the construction of a branch line of railroad, about two miles in length, from a point on the main line in Panama City to a point on St. Andrews Bay in the town of St. Andrews. Drummond agreed at his own expense to secure the right of way for that part of the branch line within the town of St. Andrews, clear and grade the entire line, construct all necessary trestles and culverts, surface the roadbed, furnish and lay the cross-ties, lay the rails on the entire line, furnish the site, and construct a depot in St. Andrews, and convey the right of way, including the depot site, and certain lands, with riparian rights, fronting on the

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

waters of St. Andrews Bay, for water terminals, to a corporation to be organized by Steele. He also agreed to build a switch and lease it to the said corporation.

Steele agreed to acquire that part of the right of way, about half a mile in length, lying in Panama City, and at his own expense to supply the iron rails and accessories necessary for the branch railroad, secure from the state of Florida a charter authorizing the construction of the branch line and the use of it as a common carrier of passengers and freight, and convey to it the right of way in Panama City, operate at all times trains over the main and branch lines from Dothan to St. Andrews, and give to St. Andrews the same service that should be given to Panama City, with equally good rates. The contract provides that the conveyance by Drummond "shall be conditioned upon the continued maintenance and operation of the said line of road, giving the service as above provided, and that upon the failure to furnish the same for a period of 30 days the said property shall revert to the grantor or grantors." Drummond fully performed his part of this contract, and in doing so spent about $40,000. Steele furnished the rails and organized and secured a charter for the St. Andrews Bay Railway & Terminal Company, a corporation, and subscribed to all except 4 shares of its capital stock of $50,000. The branch line was completed in the summer of 1915, and soon thereafter Drummond executed a deed to the terminal company, by which he conveyed the land called for in the contract, including the railroad right of way, in which, after reciting that the railroad switch had been built, he repeats the terms of the lease and agreement with reference to it. The deed conveys the fee-simple title, which it is shown without dispute Drummond had, but contains a proviso that the conveyance was subject to several conditions, the nonperformance of which should immediately render the conveyance void, and thereupon title to all property, rights, and privileges conveyed should immediately revest in Drummond. One of these conditions is that the branch line should forever regularly and continuously be operated in conjunction with the main line of the Atlanta & St. Andrews Bay Railway Company.

This branch line was operated as contemplated from the time of its completion in 1915 until 1921, when the Atlanta & St. Andrews Bay Railway Company obtained permission from the Interstate Commerce Commission to abandon its operation during a test period, and in August, 1921, operation over the branch line ceased, and never has been resumed. In June, 1922, the Interstate Commerce Commission gave its permission to abandon operation of the branch line permanently. In May, 1923, the defendant, in which the then owner of the main line railroad company was interested, tore up and removed the rails and accessories from the right of way on the entire branch line, including that part conveyed by Drummond to the terminal company.

Under instructions of the trial court to find for the plaintiff an amount equal to the value of the iron removed from that part of the right of way in St. Andrews, the jury returned a verdict for $3,400, upon which judgment was entered.

[1, 2] The defendant concedes that whatever title the plaintiff conveyed revested in him upon the condition of the deed requiring contin-

uous operation of the railroad being broken, but makes the technical contention that the title to the rails and accessories could not revest in the plaintiff, because the deed only provides for the revesting in him of such title as he had conveyed. We are of opinion that the rails, which were in place when the deed was made, had already become a part of the realty, and were also conveyed to the terminal company. Porter v. Pittsburg Bessemer Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210; New Mexico v. United States Trust Co., 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407. See also note in 66 L. R. A. 41. But, aside from that, if it was the intention of the parties, as disclosed by their agreement and the surrounding circumstances, to make the rails an accession to the land, the judgment of the trial court was correct. Seedhouse v. Broward, 34 Fla. 509, 16 South. 425; 11 R. C. L. 1062. This railroad was not built for temporary purposes. It is clear that its use was intended to be permanent. The expense to the plaintiff was many times the value of the rails contributed by Steele, and doubtless that expense would not have been incurred, except for plaintiff's belief that Steele would procure continuous operation of the branch line in connection with the main line which he controlled. Undoubtedly the plaintiff did not rely upon the rails to secure himself against loss in the event the railroad should be abandoned, but it is apparent that his outlay of money to acquire the right of way and build the roadbed was induced by the belief that Steele would perform his personal obligation, expressed in the contract, that the condition for continuous operation would be kept. On the other hand, the requirements which Steele made that the plaintiff should provide a depot and terminal facilities on the water front are only consistent with an intention on his part to operate permanently the branch or terminal line in conjunction with his main line of railroad. There is nothing to indicate a temporary arrangement, or that a right existed to remove the rails if the terminal company ceased to operate. On the contrary, every circumstance tends to show that it was the mutual intention of both parties that the property contributed by each should be devoted to a continuous and perpetual use.

The judgment is affirmed.