The CITY OF ABERDEEN, a municipal corporation of the State of South Dakota

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a Corporation; Kenneth D. Vaughan; Susan K. Vaughan Kamla; Philip L. Vaughan; Kenneth W. Vaughan; June L. Johnson; and all persons unknown who have or claim to have any estate or interest or lien or encumbrance upon the premises or any part thereof, described in the complaint

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a corp.

The CITY OF ABERDEEN, A Municipal Corporation of the State of South Dakota, Plaintiff

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, A Corporation; Kenneth D. Vaughan; Susan K. Vaughan Kamla; Philip L. Vaughan; Kenneth W. Vaughan; June L. Johnson; and All Persons Unknown Who have or Claim to Have Any Estate or Interest or Lien or Encumbrance Upon the Premises, or Any Part Thereof, Described in the Complaint, Defendants.

Kenneth D. VAUGHAN; Susan K. Vaughan Kamla; Philip L. Vaughan; Kenneth W. Vaughan and June L. Johnson, Defendants and Third Party Plaintiffs,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, A Corporation, Third Party Defendant.

Civ. No. 82–1057.

United States District Court, D. South Dakota, N.D.

Dec. 21, 1984.

Terence A. O'Keefe, Siegel, Barnett & Schutz, Aberdeen, S.D., for plaintiff.

Stuart L. Tiede, Arlo D. Sommervold, Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., for defendant and third party defendant Chicago and Northwestern Transp. Co.

John S. Lovald, Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, S.D., for defendants and third party plaintiffs.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

This case, essentially a quiet title action, was originally brought in the Fifth Judicial Circuit Court of South Dakota against Chicago and Northwestern Transportation Company (CNW) and several individuals (the Vaughans). Plaintiff City of Aberdeen claims title to a strip of land within the municipal boundaries of Aberdeen (for purposes of this opinion, "Tract A") pursuant to 43 U.S.C. § 912. The portion of Section 912 pertinent to this case provides that whenever a railroad company abandons land within a municipality, title to the abandoned property vests in the municipality.

The Vaughans removed the case to federal district court on the ground that the action arose under federal law, *see* 28 U.S.C. § 1441(b), and in their answer, plead a crossclaim against CNW. Shortly after answering, the Vaughans also filed a third-party complaint naming CNW as defendant. The Vaughan defendants are all successors in title to a common purchaser of land from CNW: Aberdeen Steel Buildings, a South Dakota corporation. The land sold by CNW to Aberdeen Steel Buildings (for purposes of this opinion, "Outlot B") is a portion of the land at issue in this lawsuit, and lies within the original boundaries of Tract A at the southern edge of the Aberdeen city limits. In their crossclaim and third-party complaint, the Vaughans alleged that if Aberdeen's contentions were true, then CNW fraudulently represented itself to be the unqualified owner of the parcel it sold to Aberdeen Steel Buildings.

Following service of the crossclaim and third-party complaint, the parties began a lengthy series of settlement negotiations. Unable to settle the dispute, the parties came back to court and stipulated to a bifurcation of the issues. Plaintiff's quiet title action was to be tried first inasmuch as the trial of the third-party plaintiffs' fraud claim depended upon the outcome of the main action. A stipulation of facts was agreed to, briefs were filed, and on October

23, 1984 the court heard oral arguments. For the following reasons, this court now holds that Section 912 does not vest title to any of the disputed realty in plaintiff.

## BACKGROUND

The setting of this case goes back to 1875 with Congress' enactment of what is popularly known as the "General Railroad Right-of-Way Act", Pub.L. No. 94–579, 90 Stat. 2793 (codified at 43 U.S.C. §§ 934–939), granting to the railroads a right-of-way through public lands of the United States. Pursuant to the Act, in 1880, Dakota Central Railroad acquired a 200 foot wide right-of-way which traversed the land in dispute in this case. CNW is a successor in interest of Dakota Central to that right-of-way.

In 1890, pursuant to a timber culture certificate, the United States granted to Andrew Melgaard the "South East quarter of section twenty four in township one hundred and twenty three North of Range sixty four West of the Fifth Principal Meridian in South Dakota containing one hundred and sixty acres." This was land traversed by Dakota Central's right-of-way. In 1909, by warranty deed, Andrew Melgaard and his wife conveyed a portion of this property, several acres abutting the east side of the railroad right-of-way, to Aberdeen for use as a park. The park has continued in existence and is presently known as Melgaard Park.

In 1965, CNW quit claimed Outlot B, a parcel of land between Melgaard Park and the railroad tracks, to Aberdeen Steel Buildings.[1] Aberdeen Steel Buildings subsequently conveyed Outlot B to its president, defendant Kenneth W. Vaughan, by warranty deed. Vaughan, in turn, conveyed by warranty deed an undivided one-half interest in Outlot B to A.C. Nasvik. Upon Nasvik's death in 1975, his heir, defendant June L. Johnson inherited his interest in Outlot B. By quit claim deed, in 1978 Vaughan conveyed his remaining one-half interest in Outlot B to his children, defendants Kenneth D. Vaughan, Susan K. Vaughan Kamla and Philip L. Vaughan as tenants in common.

In August, 1982, the Interstate Commerce Commission granted CNW authority to abandon 14.7 miles of railroad line in Brown County, South Dakota. The abandoned line included Tract A and Outlot B. Plaintiff thereupon initiated its quiet title action in state court.

## DECISION

### I.

Plaintiff argues that under 43 U.S.C. § 912 it is entitled to Tract A and Outlot B. Section 912 states in relevant part that:

> [w]henever public lands of the United States ... granted to any railroad company for use as a right-of-way for its railroad ... and use and occupancy of said lands for such purposes has ceased ... by forfeiture or abandonment ... then ... all right, title, interest and estate of the United States in said lands ... within a municipality ... shall vest in such municipality....

Defendants assert that Section 912 is inapplicable to this case because when the railroad abandoned its line, there was no "right, title, interest or estate of the United States" left to vest in the municipality. On the basis of the reasoning found in *Great*

---

1. Long before CNW quitclaimed Outlot B, in 1916, CNW commenced an action in United States District Court for the District of South Dakota to have its rights in the right-of-way adjudicated superior to numerous defendants who were encroaching upon it. Among the named defendants was the City of Aberdeen which did not make an appearance in that action. In 1920, the district court entered a decree to the effect that the "defendants have not, nor has any of them, any estate, right, title or interest whatever in or to" the railroad's right-of-way. The district court further concluded that "the title of the plaintiff thereto is good and valid" and permanently enjoined any of the defendants, their agents or successors," from asserting any claim whatever in or to said lands and premises adverse" to CNW. Defendants now assert that the 1920 decree has a res judicata effect on the present action. Because this court holds 43 U.S.C. § 912 inapplicable to the facts of this case, it is unnecessary to consider this defense.

*Northern Railway Company v. United States*, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942), this court agrees with the defendants. However, before discussing *Great Northern* and why this court believes it to be helpful in resolving the issues presented here, it seems necessary to briefly examine the federal statutes involved in this case: the General Railroad Right-of-Way Act of 1875 (codified at 43 U.S.C. §§ 934–939) and the Railroad Right-of-Way Abandonment Act (codified at 43 U.S.C. § 912) enacted in 1922.

### The Federal Statutes

By 1871, Congress' policy of subsidizing railroad construction with lavish land grants in order to encourage rapid railroad building and construction of a much-desired transcontinental railroad had met with considerable public disfavor. *Great Northern, supra*, at 273, 62 S.Ct. at 533, 86 L.Ed. at 842. Prompted by this, yet still desiring to encourage development of the West, Congress discontinued these land giveaways to railroad companies and began passing special acts granting only rights-of-way through the public lands to certain railroads. It was the burdensome task of legislating a special act for each new rail line that eventually led to the passage of the General Railroad Right-of-Way Act of 1875. *Id.* at 275, 62 S.Ct. at 534, 86 L.Ed. at 842.

Apparently, in the years following the Act's passage, there was some conflict regarding the type of property interest the Act gave to the railroad. *Id.* at 275–76, 62 S.Ct. at 534–35, 86 L.Ed. 842–43. This conflict ended with the Supreme Court's decision in *Rio Grande Western Railway Company v. Stringham*, 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136 (1915), in which the Court declared:

> [t]he right of way granted by this and similar acts is neither a mere easement, nor a fee simple absolute, but a limited fee, made on an implied condition of reverter in the event that the company ceases to use or retain the land for the purposes for which it is granted, and

carries with it the incidents and remedies usually attending the fee.

*Id.* at 47, 36 S.Ct. at 6, 60 L.Ed. at 138. In previous decisions construing other acts, the Court had labeled the right-of-way held by the various railroads a "limited fee." *See, e.g., Northern Pacific Railway Company v. Townsend*, 190 U.S. 267, 271, 23 S.Ct. 671, 672, 47 L.Ed. 1044, 1047 (1903) (1864 Act of Congress granted the railroad a "limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted."); *New Mexico v. United States Trust Company*, 172 U.S. 171, 183, 19 S.Ct. 128, 133, 43 L.Ed. 407, 412 (1898) (1866 Act of Congress granted railroad an interest in the land that was "surely more than an ordinary easement ... one having the attributes of the fee...."). Thus, according to the Supreme Court, the interest acquired by the railroad under the 1875 Act was the same as that acquired by railroads under earlier acts: a limited fee.

The legislative history of Section 912 reveals that it was intended to resolve the problem of what to do with the narrow strips of land used as railroad rights-of-way once they were abandoned by the railroad company. Consistent with the Supreme Court decisions of the same era holding that the rights-of-way were limited fees, Congress believed the abandoned rights-of-way reverted to the United States. S.Rep. No. 388, 67th Cong., 2d Sess. 2 (1922). Viewing the narrow strips as of little or no use or value to the Government, Congress passed Section 912 providing that the abandoned right-of-way vested in the person or entity owning the land traversed by the railroad line, except when the right-of-way was within a municipality, in which case it then vested in the municipality.

### Great Northern Railway Company v. United States

In 1942, the Supreme Court had opportunity to reexamine the limited fee concept. In *Great Northern*, the United States sought to enjoin a railroad company from drilling for oil and minerals underlying a

right-of-way granted to the railroad pursuant to the 1875 Act. The Government maintained that the act conveyed only an easement, and that the railroad was not entitled to the subsurface oil and minerals. *Great Northern, supra,* 315 U.S. at 270–72, 62 S.Ct. at 532–33, 86 L.Ed. at 840. The Supreme Court agreed. According to the Court, there was a definite policy change after 1871 with regard to railroad rights-of-way. This policy change was in favor of granting the railroads only easements, including, of course, rights-of-way granted under the 1875 Act. Though shrouded for a time by the Supreme Court's *Stringham* decision, the policy change was evident to the *Great Northern* Court "from the language of the Act, its legislative history, its early administrative interpretation and the construction placed upon it by Congress in subsequent enactments." *Id.* at 277, 62 S.Ct. at 535, 86 L.Ed. at 844. The *Stringham* decision was simply dismissed as not controlling because the change in Congressional policy after 1871 was not brought to the Court's attention.

## II.

■ In light of *Great Northern,* it is clear that the right-of-way granted under the 1875 Act to Dakota Central Railroad, CNW's precedessor in interest, in 1880 was only an easement. This court believes it equally clear that *Great Northern* renders Section 912 inapplicable to this case.

Section 912 was enacted when Congress and the courts erroneously believed a right-of-way was a limited fee with the United States holding a reversionary interest. The purpose of legislation was to address those situations where land embraced in the right-of-way reverted to the United States notwithstanding a patent of the underlying land to some other party. Congress made no distinction between pre and post-1871 grants.

■ Defendants argue and this court agrees, however, that after *Great Northern,* Section 912 was no longer applicable to post-1871 right-of-way grants. As a mere easement, once a railroad ceases using for railroad purposes a right-of-way granted after 1871, it disappears and the underlying landowner has the *use* of property he already *owns.* As of the date the United States patents the underlying land, it has no right, title, interest or estate to be transferred under Section 912. The patentee acquires fee title to the entire tract subject to the railroad's easement. This analysis finds support in the Tenth Circuit Court of Appeals' *Wyoming v. Udall,* 379 F.2d 635 (10th Cir.1967) decision. Confronted with a controversy over oil deposits underlying a pre-1871 right-of-way grant traversing Wyoming school lands, the court stated: "We realize that in Great Northern, the court completely disregarded the Abandoned Railroad Right-Of-Way Act and that after Great Northern, such act applied only to pre-1871 grants." *Id.* at 639.

■ Applying this analysis to the facts of this case, when the United States granted Dakota Central a right-of-way, it granted only an easement. In 1890, when the United States patented the underlying land to Andrew Melgaard, it conveyed to him all of the land subject only to the railroad's right to *use* and *possess* its right-of-way. The United States did not retain a reversionary interest in the land after its conveyance to Melgaard. Consequently, when CNW abandoned, Aberdeen did not acquire any interest in Tract A or Outlot B pursuant to Section 912. Because this court holds Section 912 does not entitle plaintiff to the disputed property, it is unnecessary to discuss defendants' res judicata defense.[2]

## III.

In its trial brief, plaintiff contends that in the event this court determines that it should not prevail under 43 U.S.C. § 912, plaintiff is still entitled to Outlot B and that part of Tract A adjacent to Outlot B because Aberdeen is an abutting property owner. The property abutting the east

**2.** See fn. 1.

boundary of Outlot B is Melgaard Park conveyed to the city in 1909 by Andrew Melgaard.

Defendants strenuously object to this court deciding the merits of plaintiff's abutting landowner claim. They argue first that plaintiff failed to plead this claim in its complaint. Accordingly, their answers, the factual stipulation they agreed to, and all other documents submitted to this court were submitted in the belief that this case was being tried exclusively on the Section 912 claim. Defendants argue further that the alternative claim raises troubling questions with respect to parties not joined in this proceeding who may have title or interest in the disputed property. Plaintiff's response to these objections is that a broad reading of its complaint clearly suffices to place the abutting property issue before this court. As a precaution, however, plaintiff moves this court for leave to amend its complaint to include the alternative claim.

■■■■ Plaintiff's abutting landowner claim is primarily a question of state law. As such, jurisdiction is pendent and therefore discretionary on the part of this court. The justification for exercising this court's pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966).

■■■ While this court therefore has the power to decide plaintiff's pendent claim, it does not believe under the circumstances of this case that it should exercise this power. Plaintiff urges this court to decide its pendent claim on the basis of judicial economy and convenience. This court believes that even if deciding this claim would promote judicial economy and convenience, the substantial likelihood of prejudice to defendants brought about by deciding this claim on an incomplete record outweighs these other considerations.

Mindful that "[a]ll pleadings shall be so construed as to do substantial justice", Fed.R.Civ.P. 8(f), a fair reading of plaintiff's complaint indicates a claim to Tract A and Outlot B based exclusively on 43 U.S.C. § 912. Relying on the allegations made in the complaint, the defendants in good faith answered and entered into the limited stipulation of facts. Had the abutting landowner issue properly been alleged, it is quite likely that the record would include the history and chain of title to the 135 acres of land granted to Andrew Melgaard by timber certificate in 1890 but not conveyed to Aberdeen. Certainly, the record would include the history and chain of title to land bordering the western edge of Tract A parallel with Outlot B and Melgaard Park. From the record presently available, it is entirely possible that simultaneous to his conveyance of the twenty-five acres to Aberdeen, Melgaard conveyed the railroad right-of-way as part of the remaining 135 acres to a third person. It is equally possible that when all the facts are developed, it may be concluded that Melgaard intended to retain the land embracing the right-of-way. This is not intended to suggest such evidence actually exists, rather it is intended to show that such possibilities have not been negated by the present record.

In sum, the record is inadequate to decide plaintiff's alternate claim. Such claim should be decided only after the defendants, now aware of the abutting landowner issue, have had ample opportunity to conduct such discovery and to obtain such additional evidence as may be available.

## CONCLUSION

This court has decided the federal question: 43 U.S.C. § 912 is inapplicable to the facts of this case. Consequently, Aberdeen has no claim to Tract A and Outlot B premised on the federal statute. Regarding plaintiff's abutting landowner claim, this court declines to exercise its pendent jurisdiction. To hear this claim is substantially likely to prejudice defendants who have proceeded in this litigation holding a

good faith belief that it would be confined to the federal claim.

The foregoing represents the findings of fact and conclusions of this court.