[No. 52593–5.   En Banc.   August 21, 1986.]

THE CITY OF BUCKLEY, *Appellant,* v. BURLINGTON
NORTHERN RAILROAD CORPORATION,
ET AL, *Respondents.*

*Kirshenbaum & Combs,* by *Loren D. Combs,* for appellant.

*Billett, Comfort & Rosenow,* by *Lawrence D. Silvernale* and *George C. Inman, Jr.; Susan L. Barnes, Department of Justice,* for respondents.

PEARSON, J.—The sole issue in this case is whether 43 U.S.C. § 912 (1982) entitles a municipality to receive the United States' reversionary interest in an abandoned railroad right of way granted to a railroad company pursuant to the Northern Pacific Land Grant Act of 1864, if the municipality had not received a patent to the underlying fee. We hold § 912 does entitle a municipality to the federal

government's reversionary interest, and that the trial court erred in granting respondent's motion for summary judgment.

I

On July 2, 1864, Congress created the Northern Pacific Railroad Company under the Northern Pacific Land Grant Act of 1864, ch. 217, 13 Stat. 365 (1864). This act empowered the Northern Pacific Railroad Company to construct a continuous railroad from Lake Superior to Puget Sound. Section 2 of the act gave the Northern Pacific Railroad Company a right of way across public lands. Section 3 of the act gave the Company the right to alternate sections of public land on each side of the railroad line. Pursuant to section 3 of the act, the Company was granted patents to 2 sections of land, now within the city of Buckley, over which once ran the railway line constructed pursuant to section 2 of the act.

Respondent Burlington Northern Railroad Corporation is the successor in interest to the Northern Pacific Railroad Company. After receiving permission from the Interstate Commerce Commission on March 16, 1982, Burlington Northern abandoned the railway line and removed the tracks previously running through the city of Buckley. The City sought an order of summary judgment quieting title to the right of way in the City. Burlington Northern opposed the City's motion and cross–moved for summary judgment, claiming it was entitled to the right of way. Both parties relied upon 43 U.S.C. § 912. The trial court entered an order in Burlington Northern's favor, and the City appealed. The Court of Appeals transferred the case to this court pursuant to RAP 4.3. We reverse.

II

Summary judgment is appropriate "if the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Del Guzzi Constr.*

*Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986). Because the facts of this case are undisputed, the only question for this court is whether Burlington Northern was entitled to judgment as a matter of law.

This case apparently is one of first impression in the United States. Both parties rely upon 43 U.S.C. § 912 to support their conflicting claims to the abandoned right of way. 43 U.S.C. § 912 provides:

> Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way . . . and use and occupancy of said lands for such purposes has ceased . . . by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall . . . be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom . . . title of the United States may have been . . . granted, conveying . . . the whole of the legal subdivision . . . traversed or occupied by such railroad . . . as aforesaid, *except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality, and this by virtue of the patent thereto* and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever . . .

(Italics ours.) The purpose of § 912 is to dispose of the federal government's reversionary interest in rights of way granted pursuant to section 2 of the Northern Pacific Land Grant Act of 1864.

The City argues that the language "except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality" should be interpreted to mean that, where an abandoned right of way passes through a municipality, that land reverts to the municipality through which it runs. Burlington Northern contends, and the trial court agreed, that the phrase following the "municipality exception", "and this by virtue of the patent thereto" prohibits the reversion of an abandoned right of way to a municipality,

unless the municipality had received a patent to the underlying fee. Because the City did not receive a patent to either section 3 or 9, Burlington Northern argues that it is entitled to the right of way pursuant to the general reversionary clause. We disagree.

The enactment of § 912 apparently was in response to two court decisions in the early 1900's. In *Northern Pac. R.R. v. Townsend*, 190 U.S. 267, 47 L. Ed. 1044, 23 S. Ct. 671 (1903), the Supreme Court held that the right of way grant pursuant to section 2 of the Northern Pacific Land Grant Act of 1864 contained an implied reversionary interest in the federal government in the event the right of way was not used for a railway. *Townsend*, at 271. Subsequently, in *H.A. & L.D. Holland Co. v. Northern Pac. Ry.*, 214 F. 920 (9th Cir. 1914), the railroad argued that where the railroad had acquired a patent to an alternate section of land through which the railroad was constructed, the underlying fee and the right of way merged, thus entitling the railroad to dispose of the right of way if it was not being used for railroad purposes. The Ninth Circuit rejected this argument, holding that the merger doctrine was subordinate to the principle that "the granting act must be construed in such a manner as to give effect to the legislative intent." *Holland*, at 925. According to the court, the Supreme Court's opinion in *Townsend* reflected Congress' intent that an abandoned right of way should revert to the federal government.

Against this decisional history, Representative Christopherson first introduced H.R. 9899, "A Bill To provide for the disposition of abandoned portions of rights of way granted to railroad companies." H.R. 9899, 66th Cong., 2d Sess. (1919). This bill provided that, upon abandonment of a right of way by a railroad, title to the right of way vested in the individual or corporation to whom a land patent had been granted, "and this by virtue of said patent". No exceptions existed for rights of way running through a municipality. Under this version of the bill, Burlington Northern clearly would be entitled to the right of way in

dispute in this case.

In 1920, however, Representative Christopherson re-ported an amended version of H.R. 9899, which inserted the "municipality exception" between the general rever-sionary clause and the phrase "and this by virtue of said patent". H.R. Rep. No. 851, 66th Cong., 2d Sess. (1920). Although the bill was not enacted that year, in 1921 Repre-sentative Christopherson reintroduced the failed H.R. 9899 as H.R. 244. Subsequently, Representative Burtness offered an amendment to H.R. 244, adding the "highways excep-tion". After minor amendments by the Senate (reported in S. Rep. No. 388, 67th Cong., 2d Sess. (1922)), including a deletion of the words "said patent" and insertion of the words "the patent thereto", H.R. 244 was enacted by Con-gress on March 8, 1922, and was later codified as 43 U.S.C. § 912.

This legislative history clearly supports the City's posi-tion that a municipality need not necessarily have been granted a townsite patent in order subsequently to receive the railroad right of way upon abandonment. In the original version of H.R. 9899, the phrase "and this by virtue of said patent" followed the general reversionary clause which transferred the abandoned right of way to the original titleholder. In H.R. Rep. No. 851, the municipality excep-tion was inserted between the general reversionary clause and the phrase "and this by virtue of the patent thereto". Assuming positioning of the municipality exception was as much due to chance as it was due to statutory draftsman-ship, one can argue that the phrase "and this by virtue of the patent thereto" modifies the general reversionary clause and not the municipality exception. If this interpretation is valid, the City need not have received a townsite patent in order to obtain the federal government's reversionary interest in Burlington Northern's abandoned right of way.[1]

---

[1]Fortunately, the letters and remarks generated by the bill provide the court an additional resource from which can be gleaned Congress' intent with respect to the municipality exception. Suffice it to say that remarks made during debate, in

As a corollary argument, it seems obvious that if Congress had intended to limit reversionary interests to those municipalities that held the underlying patent, it simply could have included municipalities in the general reversionary clause to accomplish that result. The clause now reads that, upon abandonment, the federal government's reversionary interest in the right of way "shall . . . be transferred to and vested in any *person, firm,* or *corporation* . . . to whom . . . title of the United States may have been . . . granted". (Italics ours.) 43 U.S.C. § 912 (1982). If Congress had intended to limit the reversionary interest to municipalities holding patents or title, it could have added the word "municipality" before or after the words "person, firm, or corporation". Congress' decision to deal instead with municipalities in a separate clause suggests that it did not intend to limit the reversionary interest to municipalities holding title granted by the United States.

Finally, a reading of the language following the phrase "and this by virtue of the patent thereto" reveals what Congress actually intended by using this language. The entire clause reads: "and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever". This language clearly suggests that Congress intended for patent or titleholders to receive the reversion *automatically* upon a decreed abandonment, without further instruments of conveyance or resort to litigation. As such, this clause can be viewed as an administrative "cleanup" measure, intended not to establish a condition precedent to receipt of the reversion (for the condition is stated in the reversionary clause), but rather to simplify the procedure by which patent or titleholders could obtain the reversion. By making the reversion automatic, Congress obviated the need for the drafting of additional legal instruments by the

---

the various reports, and in letters attached thereto, all support the City's interpretation that § 912 vests the reversion in a municipality, regardless of whether the municipality held a patent to the underlying fee.

federal government, or for resolving disputes over each abandoned right of way on a case–by–case basis in the courts.

As we interpret § 912, the condition precedent to receipt of the federal government's reversionary interest in an abandoned railroad right of way granted pursuant to section 2 of the Northern Pacific Land Grant Act of 1864 by anyone other than a municipality is "title". If a person, firm or corporation has title to the underlying fee, the reversion vests automatically, unless the right of way runs through a municipality. In that event, the municipality takes the reversion regardless of whether it has title to the underlying fee.[2] Legislative history indicates that Congress contemplated cities, towns and villages as the type of "municipality" benefiting from the municipality exception.

We reverse the trial court's order for summary judgment and remand for entry of judgment in favor of the City of Buckley.

DOLLIVER, C.J., and UTTER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

---

[2]This interpretation of § 912 generally is supported by dicta in *Aberdeen v. Chicago & North Western Transp. Co.*, 602 F. Supp. 589 (D.S.D. 1984). In *Aberdeen*, the District Court faced the issue of whether § 912 applied to a right of way granted under the General Railroad Right–of–Way Act, 43 U.S.C. §§ 934–939 (1982). In concluding that § 912 did not apply to such a right of way, the court reviewed the purpose and effect of the section. According to the court:

> Viewing the narrow strips as of little or no use or value to the Government, Congress passed Section 912 providing that the abandoned right–of–way vested in the person or entity owning the land traversed by the railroad line, *except* when the right–of–way was within a municipality, in which case it then vested in the municipality.

(Italics ours.) *Aberdeen*, at 592. Although dicta, the District Court's interpretation of § 912 comports with that of the City. *See also Idaho v. Oregon Short Line R.R.*, 617 F. Supp. 207 (D. Idaho 1985).