**KING COUNTY, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD CORPORATION, a corporation doing business in the State of Washington, Defendants.**

No. C93–1798GW.

United States District Court,
W.D. Washington,
at Seattle.

Nov. 10, 1994.

Norm Maleng, King County Pros. Atty., Thomas W. Kuffel, Deputy Pros. Atty., Civ. Div., Tort Section, Seattle, WA, for plaintiff.

Robert E. Walkley, Redmond, WA, Larry Leggett, Kroschel & Gibson, Bellevue, WA, for defendant.

## ORDER

WILSON, United States Magistrate Judge.

### INTRODUCTION

This is an action for declaratory relief brought by King County (Washington) against the Burlington Northern Railroad Company ("BN"). The County seeks a judicial declaration, pursuant to Title 43, United States Code, Section 912, that certain land within its boundaries which was previously used by BN as a right of way, (1) has been abandoned by the Railroad, and (2) has been embraced by the County as a public highway legally established within one year of a declaration of abandonment by a court of competent jurisdiction.

The parties have consented to a United States Magistrate Judge exercising jurisdiction in the case, including entering judgment, pursuant to 28 U.S.C. § 636(c).

### THE FACTS AND PROCEDURAL HISTORY

The parties have stipulated to the operative facts, including a legal and factual description of the land in question, and its historical use by BN and its predecessor (the Northern Pacific Railway Company ("NP")) as a railroad right of way. The realty in question is identified by the County as the "Enumclaw Plateau Corridor," and it is stipulated by and between the parties that it "is that portion of the Veazey-to-Cascade Junction line in unincorporated King County, which extends from Veazey south to the White River on the King–Pierce County line, excluding that segment located within the City of Enumclaw. Translated to railroad mileposts, the Enumclaw Plateau Corridor is that part of the Veazey-to-Cascade Junction line that runs from approximately MP [milepost] 7.0 south to MP 13.0 at the White River, excluding portions in the City of Enumclaw." (Joint Statement of Stipulated Facts, page 2, hereafter "Stipulated Facts").

The Enumclaw Plateau Corridor is a portion of a railroad right of way across federal land granted to NP, known as the "Veazey-to-Cascade Junction line," extending from MP 7.0 near Veazey in King County, to MP 17.02 near Cascade Junction in Pierce County (Washington). (All of the Enumclaw Plateau Corridor is located within King County.) (Stipulation of facts.) BN also refers to this strip of right of way as part of the "Buckley Line." (Affidavit of Larry Seyda).

BN and its predecessors operated along the Enumclaw Plateau Corridor as a part of common carrier railroad networks continuously from the date of its acquisition until the early 1980's. On or about February 5, 1982, the Railroad filed an "Application for Abandonment of Railroad Line between Veazey and Cascade Junction," with the Interstate Commerce Commission ("ICC"). The application pertained to the entire 10.02 mile length of the Veazey-to-Cascade Junction line, including the Enumclaw Plateau Corridor and other portions of the line located in the cities of Enumclaw and Buckley, and in unincorporated Pierce County, respectively.

On March 16, 1982, the ICC issued a decision (Docket No. AB–6 (Sub. No. 107) authorizing the Railroad to abandon common carrier service on the Veazey-to-Cascade Junction line. On May 15, 1982, BN canceled its tariffs on the line, and on May 26, 1982, the line was taken out of service, although the track itself was left in place for a time. BN entered into a contract for the removal of the track on or about October 5, 1982, and had salvaged (removed) all of the track which it intended to salvage, by March 1985.

In July, 1989, the King County Council passed Ordinance 9071, which called for a special election to seek voter authorization to issue bonds for the acquisition, development, renovation and improvement of public green spaces, green belts, open space parks and trails in King County. The Ordinance expressly designated the Enumclaw Plateau Trail, of which the Enumclaw Plateau Corridor is a portion, as a County project to be accomplished.[1]

In November, 1989 a special election resulted in authorization by the County's voters for the County to issue general obligation bonds to pay for all or part of the costs in acquiring and developing County green space, green belt, open space, parks and trail projects.

In October, 1992, the King County Council adopted the King County Regional Trails Plan. The Regional Trails Plan sets out a network of multi-purpose recreational trails connecting communities inside and outside the County. The Enumclaw Plateau is specifically included in the Plan.

In May, 1993, the King County Council adopted the King County Nonmotorized Transportation Plan, which outlines a network of facilities for non-motorized transportation activities within and without road rights of way. The Enumclaw Plateau Trail is included within this network.

On December 23, 1993, the County filed this action. On September 16, 1994, the County moved for Summary Judgment. BN filed its Opposition and the County its Reply. Both sides agree that the issue now before the Court may be decided on the pleadings and the filings, and that neither evidentiary hearing nor argument on the Motion is required.

## DISCUSSION

The statute which the County cites, 43 U.S.C. § 912, is known as the Railroad Right

---

1. The Ordinance set forth the following findings and declarations:

 A. Enactment of this ordinance is necessary for the health, welfare, benefit and safety of the residents within King County and is strictly a county purpose.

 B. Public green spaces, green belts, open space, parks and trails make King County a more desirable place in which to live and to visit.

 C. Existing public green spaces, green belts, open space, parks and trails are no long-er adequate and additional public green spaces, green belts, open space, parks and trails are needed.

 D. Public green spaces, green belts, open space, parks and trails acquired or improved pursuant to this ordinance, together with existing lands and facilities set aside for those purposes, will constitute a necessary system of public green spaces, green belts, open space, parks and trails for the county and its residents.

of Way Abandonment Act, and provides a means for the federal government to dispose of abandoned or forfeited federal railroad grants.[2]

■ It was enacted in 1922 in response to a decision by the United States Supreme Court interpreting the Northern Pacific Land Grant Act of 1864, the same Act which created the Veazey-to-Cascade Junction line. In *Northern Pacific R.R. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), the Supreme Court had ruled that the Act contained an implied reversionary interest in the federal government in cases in which right of ways granted under the Act were abandoned by the railroad. 190 U.S. at 271, 23 S.Ct. at 672. In response to *Townsend*, Congress enacted (*inter alia*), Section 912 by which the federal government divested itself of any such reversionary interest in such strips of property which might be abandoned for railroad purposes.[3] The purpose of the legislation was to "ensure that railroad rights-of-way would continue to be used for public transportation purposes, primarily for highway transportation". *Idaho v. Oregon Short Line R.R. Co.*, 617 F.Supp. 207, 212 (D.C.Idaho 1985).

■ While Section 912 has been described by one court as "not conducive to leisurely reading," [4] for purposes of this case, the parties agree that Section 912, if applicable, creates an interest in the right of way if 1) a court of competent jurisdiction has (or does) declare the right of way abandoned by BN, and 2) the County has (or does) embrace the right of way in a public highway within one year after such a court decree. The Court concurs in this interpretation of the statute.

Here, the County argues that the requirements of Section 912 have been satisfied. First, it contends, the Railroad plainly abandoned the right of way containing the Enumclaw Plateau Corridor, as evidenced by its actions, described above. Secondly, it argues, that the Enumclaw Plateau Trail falls within the definition of a "public highway" [5]

---

**2.** Section 912 provides as follows:

"Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, *whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress*, then and thereupon all right, title interest, and estate of the United States in said lands shall, *except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture* or abandonment be transferred to and vested in any person, firm, or corporation, assignee, or successors in title and interest to whom or to which title of the United States may have been or may be granted conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided shall vest in such municipality, and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever. Provided, That this Act [this section] shall not affect conveyances made by any railroad company of portions of its right of way if such conveyance be among those which have been or may hereafter [after Mar. 8, 1922] and before such forfeiture or abandonment be validated and confirmed by any Act of Congress, nor shall this Act [this section] affect any

public highway now on said right of way [on Mar. 8, 1922]: Provided further, That the transfer of such lands shall be subject to and contain reservations in favor of the United States of all oil, gas, and other minerals in the land so transferred and conveyed, with the right to prospect for, mine, and remove same." (Emphasis supplied).

**3.** In addition to Section 912, dealing with instances in which there has been an abandonment or forfeiture of the property for railroad purposes, Congress also enacted 43 U.S.C. § 913 (1920), permitting railroads to convey portions of their right of ways, as long as the conveyance did not reduce the right of way below 100 feet, and 23 U.S.C. § 316, allowing railroads to convey any part of a right-of-way to a state highway department or its nominee.

**4.** *Idaho v. Oregon Short Line R.R. Co., supra*, 617 F.Supp. at 216.

**5.** The parties agree that the federal courts have ruled that state law determines what constitutes a "public highway legally established" for purposes of federal land grant statutes, including Section 912. *Vieux v. East Bay Regional Park District*, 906 F.2d 1330, 1340 (9th Cir.1990), *cert. denied*, 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414 (1990). Washington State's definition of "public highway" for purposes of Section 912 is found at RCW 47.30.070:

For purposes of 43 U.S.C. 912 and related provisions of federal law involving federally

which has been established within the one year statutory period specified in Section 912. All that is required, the County maintains, is a decree from the Court declaring that as to which there is no dispute.

 The primary disagreement between the County and the BN lies in the effect to be given a decision by the Washington State Supreme Court, *City of Buckley v. Burlington Northern Railroad Corp.*, 106 Wash.2d 581, 723 P.2d 434 (1986).[6]

BN does not deny or contest the County's allegation that it has abandoned the right of way in question. Indeed, it agrees that the abandonment requirement of Section 912 is established, and submits that it (abandonment) was completed not later than 1985. It is BN's position, however, that the right of way was abandoned and reverted under state law years ago, and that the County cannot possibly satisfy the requirements of Section 912 that it establish a "public highway" within "one year" of a declaration or decree of abandonment by a "court of competent jurisdiction." The County cannot do so, BN argues, because the Washington Supreme Court "declared or decreed" the very right of way now in question "abandoned" in 1986, in its decision in *City of Buckley v. Burlington Northern Railroad Corporation*, 106 Wash.2d 581, 723 P.2d 434 (1986). Since the County admittedly took no steps to establish the right of way as a "public highway" until the passage of Ordinance 9071 in 1989, *three*

*years* after the Washington Supreme Court's decision, BN maintains that it clearly did not act within *one year* of the Supreme Court's decision, as required by Section 912. Accordingly, BN argues, the County cannot possibly satisfy the requirements of Section 912, since any decree by this Court would be a *second* decree by a court of competent jurisdiction, and no such subsequent decrees are authorized by Section 912.

The County does not disagree with the proposition that if the *Buckley* decision constituted a "declaration or decree" of abandonment, it cannot meet Section 912's requirement that it must have established its "public highway" on the abandoned right of way within one year of that 1986 decision. The County argues, however, that *Buckley* did not constitute a "declaration or decree" of abandonment of this right of way for Section 912 purposes. The County argues that the *Buckley* decision dealt only with abandoned right of way within the City of Buckley, *in Pierce County*, Washington. It points out that the action therein originated in the Pierce County Superior Court, which had no jurisdiction over property wholly outside Pierce County, and that the property *sub judice* lies wholly in unincorporated King County. Further, the County argues, the Washington Supreme Court in *Buckley* was concerned with the "municipality" exception set out in Section 912, whereas the County now seeks relief under the "public highway"

---

grated railroad rights of way, a bicycle, equestrian, or pedestrian path shall be deemed to be a public highway under the laws of the State of Washington.

6. BN also presents an alternative argument to the effect that reversionary property interests in the right of way occurred automatically when it physically abandoned the property, by action of Washington state law. It cites *Lawson v. King County*, 107 Wash.2d 444, 730 P.2d 1308 (1986) for this proposition. In *Lawson*, the Washington Supreme Court did indeed find that conversion of a *privately* deeded railroad right of way in a "rails to trails" program, constituted abandonment of the right of way for railroad purposes, causing automatic reversion of the right of way to the original owners.

The County points out, however, that *Lawson* dealt with *deeded* right of way interests, while the instant case deals with a right of way created by a federal *grant*. Further, as the County also

points out, *Lawson* dealt with the application of a state statute (RCW 64.04.090) and not with Section 912.

The County contends that *Lawson* is thus distinguishable, and does not purport to address the issue raised here, *i.e.* may the reversionary interest reverting to the federal government as a result of BN's abandonment of the right of way, now be disposed of via Section 912?

To the extent that BN's argument in this regard is that this case may be decided entirely by reference to Washington state law, the Court rejects that argument. BN properly recognizes that *Lawson* dealt with "deeded, not granted, right of way ... and there are some differences in the reversion theory" (Defendant's Memorandum at 7). BN goes on to recognize that Section 912 must be addressed, and to implicitly and correctly make the primary thrust its opposition, a claim that the County cannot meet the requirements of Section 912, *infra*.

exception found in Section 912. Accordingly, the County urges, there has never been a "declaration or decree" of abandonment by a "court of competent jurisdiction" as to the right of way now sought by the County. If this Court issues such a "declaration or decree," the County contends, it has fully satisfied the requirements of the "public highway" exception in Section 912, since "[w]hether the decree is entered shortly after use and occupancy of the right of way has ceased or some years later is irrelevant." (Reply Memorandum at 7). Since it has already embraced the right of way in its public highway system, the County argues, this Court need only declare the right of way abandoned, and the County's Section 912 interest in the land will be complete.

Having reviewed the records and the files in this case and the Washington Supreme Court's decision in *Buckley,* as well as the other authorities cited by the parties, the Court concludes that *Buckley* does *not* constitute a "declaration or decree" of abandonment as to the right of way now before the Court, within the meaning of Section 912.

Initially, the fact that the action in *Buckley* was brought in reliance upon the "municipality exception," as opposed to the "public highway exception" which the County argues here, appears to be of no consequence. Both exceptions are triggered by a declaration or decree of abandonment issued by a court of competent jurisdiction, and for purposes of this discussion, the fact that the *Buckley* decision was based on the "municipality exception" has no significance. The only question before the Court is whether *Buckley* constitutes a decree or declaration that the right of way now in question was abandoned, or whether its effect for Section 912 purposes was limited to that portion of the line within the Buckley City limits which was in contention before the Pierce County Superior Court. If the Washington Supreme Court's decision has no application outside that portion of the line contained within the City of Buckley's limits, then this Court would be

free to grant the relief sought by the County. The Court turns to the *Buckley* decision for an answer to that question.

As the County points out, in *Buckley,* the City of Buckley brought a suit in Pierce County Superior Court to quiet title to the abandoned right of way contained within its city limits. By state law, the Pierce County Superior Court had venue in quiet title actions only for property wholly or partially within its county borders. RCW 2.08.210.[7] The City had no interest in quieting title to property outside its city limits; the Pierce County Superior Court had no authority to adjudicate a quiet title action as to property wholly *outside* its borders, and the property in the case now before this Court is wholly outside the borders of both Buckley and Pierce County. Moreover, the Washington Supreme Court explicitly limited its holding by stating that "[t]he sole issue in this case is whether 43 U.S.C. § 912 (1982) entitles a municipality to receive the United States reversionary interest in an abandoned railroad right of way ... if the municipality had not received a patent to the underlying fee." (106 Wash.2d at 581, 723 P.2d at 435).

Given the facts, procedural history, and the language used by the state Supreme Court in *Buckley,* the decision therein may not be considered a "declaration or decree" of abandonment by a "court of competent jurisdiction" as to the right of way now before the Court, for purposes of starting the one-year period during which the County must "embrace" it in a "public highway."

The appellate decision by the state Supreme Court in *Buckley* could not give the Pierce County Superior Court more jurisdiction than that afforded it by the state's statute (R.C.W. 2.08.210). While that appellate decision spoke of "abandonment" by BN of the right of way before it, abandonment was not an issue before the Washington Supreme Court, it had no cause to rule on that issue, and it did not do so. The Washington Supreme Court explicitly restricted its ruling to

---

7. RCW 2.08.210 provides:

"**Extent of court's process—Venue.** The process of the superior courts shall extend to all parts of the state: **PROVIDED,** That all actions for the recovery of the possession of, quieting the

title to, or for the enforcement of liens upon, real estate, shall be commenced in the county in which the real estate, or any part thereof, affected by such action or actions is situated."

the "sole question" presented it. It did not issue any "decree" or "declaration" concerning abandonment of the property now in issue, and did not need to, given the question before it.

It is not sufficient to point out, as BN does, that the question of "abandonment" was not contested by BN either in *Buckley* or in the instant case, and that both the parcel of the right of way in issue in *Buckley* and that parcel in issue here, are of one and the same line, which line was abandoned as an entity. Had the instant portion of the right of way properly been before the court in *Buckley* and had BN conceded abandonment in that lawsuit, a decree or declaration by the *Buckley* court would have presumably had the effect of starting the "one year" period running in Section 912, and the County would be barred from utilizing the Section as a means of acquiring an interest in the right of way. Since this portion of the right of way was *not* involved in that lawsuit, or even mentioned in the decision, it cannot possibly have the effect BN ascribes to it.

■ While BN argues that it is "difficult to believe that § 912 was intended by Congress to be a trap for the unwary, lying silently in wait for years or perhaps decades after abandonment" (Defendant's Memorandum at 10), Section 912 indeed places no cut-off date following abandonment by which the County was required to seek or obtain a "declaration or decree." The only statutory time limit which the County is required to meet is the one requiring that the right of way be "embraced in a public highway legally established within one year after the date of said decree...." Section 912.[8] BN does not contest the County's assertion that it has so embraced the right of way, even before the date of any declaration of abandonment by this Court.

BN states in its Memorandum that it may have available to it collateral arguments as to some portions of this right of way, which portions were acquired by deed rather than by grant, but that it chooses not to assert them in this litigation and wishes to litigate only the issue of the applicability of Section 912. It states that it is doing so "out of concern that interpretation of the statute as urged by the County could upset years of previous conveyances and reliance upon reversionary interests not only by the railroad, by all others affected as well." (Defendant's Memorandum at 4).

The County acknowledges that there may be third parties with claims affecting the right of way, who are not part of this lawsuit. It responds that it

> does not seek to adjudicate the interests of unnamed third parties and such parties wouldn't be bound by the court's decision herein. This is an action for declaratory relief; it is not a quiet title action. The County's sole purpose is to determine whether it has an interest in the subject right of way by operation of federal law. (Reply Brief at 7).

Given the record before the Court, it is satisfied that the County does have an interest in the subject right of way under federal law, specifically under Section 912. As recognized by the County, the Court does not have before it any possible competing claims from third parties, and this decision addresses only the issues now presented.

## CONCLUSION

For the reasons set forth above, it is now ORDERED, ADJUDGED, DECREED AND DECLARED THAT:

1. Plaintiff King County's motion for summary judgement is granted.

2. The Enumclaw Plateau Corridor has been abandoned by BN within the meaning of 43 U.S.C. § 912. The legal description is attached hereto as Exhibit A.

---

8. BN's argument implies that it and others possibly having interest in the right of way have been powerless to initiate proceedings leading to a "decree or declaration" from a court of competent jurisdiction during the years since BN actually abandoned the right of way. That assumption is not, of course, correct. Presumably, either BN or anyone else concerned about the potential effect of Section 912, could have triggered a court resolution of the issue, as did certain landowners in *Vieux v. East Bay Regional Park Dist.*, 906 F.2d 1330 (9th Cir.1990).

3. The Enumclaw Plateau Trail as planned by King County is a public highway within the meaning of 43 U.S.C. § 912.

4. The Enumclaw Plateau Trail has been embraced as a public highway legally established by King County within one year of a declaration of abandonment by this Court.

EXHIBIT A

ENUMCLAW PLATEAU TRAIL PROJECT

PARCELS 1 THROUGH 27

LEGAL DESCRIPTION

All that portion of the Burlington Northern Railroad Company's (formerly Northern Pacific Railway Company) Veazey to Cascade Junction, Washington Branch Line right of way, now discontinued, being of variable width on each side of said Railroad Company's Main Track centerline as originally located and constructed upon, over and across Sections 6, 7 and 18, Township 20 North, Range 7 East, W.M., and Sections 13, 24, 26, 34 and 35, Township 20 North, Range 6 East, W.M., in King County, Washington, described as follows:

All that portion of said Railroad Company's 400.0 foot wide Branch Line right of way, being 200.0 feet wide on each side of said Main Track centerline upon, over and across part of the Southeast quarter of said Section 6, Township 20 North, Range 7 East, and the Northeast quarter, the Northwest quarter of the Southeast quarter and the Northeast quarter of the Southwest quarter of said Section 7, Township 20 North, Range 7 East bounded between the North and East lines of the Southeast quarter of said Section 6 and a line drawn at right angles to said Main Track centerline distant 2046.5 feet Northeasterly of the South line of said section 7 as measured along said Main Track centerline; also,

All that portion of said Railroad Company's 300.0 foot wide Branch Line right of way, being 200.0 feet wide on the Southeasterly side and 100.0 feet wide on the Northwesterly side of said Main Track centerline upon, over and across part of the Northeast quarter of the Southwest quarter and the Northwest quarter of the Southeast quarter of said Section 7, Township 20 North, Range 7 East, bounded between the South line of the Northeast quarter of the Southwest quarter and a line drawn at right angles to said Main Track centerline distant 2046.5 feet Northeasterly of the South line of said section as measured along said Main Track centerline; also,

All that portion of said Railroad Company's 400.0 foot wide Branch Line right of way, being 200.0 feet wide on each side of said Main Track centerline upon, over and across the Southeast quarter of the Southwest quarter of said Section 7, the West half of the Northeast quarter of the Northwest quarter and Government Lots 1, 2 and 3 of said Section 18, Township 20 North, Range 7 East, and the East half of the Northeast quarter of the Southeast quarter and the Southeast quarter of the Southeast quarter of said Section 13, Township 20 North, Range 6 East, bounded between the North line of the Southeast quarter of the Southwest quarter of said Section 7 and the South line of said Section 13; also,

All that portion of said Railroad Company's 300.0 foot wide Branch Line right of way, being 100.0 feet wide on the Northwesterly side and 200.0 feet wide on the Southeasterly side of said Main Track centerline upon, over and across the North half of the Northeast quarter of said Section 24, Township 20 North, Range 6 East, bounded between the North line of said Section 24 and the South line of said North half of the Northeast quarter;

EXCEPTING THEREFROM all that portion of said Northwest quarter of the Northeast quarter lying Southerly of a line drawn parallel with and distant 825.0 feet Southerly of the North line of said Northwest quarter of the Northeast quarter as measured along the West line of said Northwest quarter of the Northeast quarter; also,

All that portion of said Railroad Company's 300.0 foot wide Branch Line right of way, being 100.0 feet wide on the Northwesterly side and 200.0 feet wide on the Southeasterly side of said Railroad Company's Main Track centerline upon, over and across the North half of the Southeast quarter of said Section

26, Township 20 North, Range 6 East, bounded between the North and South lines thereof; also,

All that portion of said Railroad Company's 200.0 foot wide Branch Line right of way, being 100.0 feet wide on each side of said Railroad Company's Main Track centerline upon, over and across the Southwest quarter of the Southeast quarter of said Section 26, Township 20 North, Range 6 East, bounded between the North and West lines thereof; also,

All that portion of said Railroad Company's 250.0 foot wide Branch line right of way, being 200.0 feet wide on the Northwesterly side and 50.0 feet wide on the Southeasterly side of said Railroad Company's Main Track centerline upon, over and across the Southeast quarter of the Southwest quarter of said Section 26, Township 20 North, Range 6 East, bounded between the East and South lines thereof; also,

All that portion of said Railroad Company's 400.0 foot wide Branch Line right of way, being 200.0 feet wide on each side of said Railroad Company's Main Track centerline upon, over and across the Southeast quarter of the Southeast quarter of the Northeast quarter and the Northeast quarter of the Southeast quarter of said Section 34, and the Northwest quarter of said Section 35, Township 20 North, Range 6 East, bounded between the North line of the said Northwest quarter of said Section 35 and lying Northerly of the centerline of the White River in said Section 34;

EXCEPTING THEREFROM all that portion of the Northwesterly 100.0 feet of the hereinabove described 400.0 foot right of way situated in the Southwest quarter of the Northwest quarter of said Section 35 bounded between the West line of said Southwest quarter of the Northwest quarter and the West bank of Boise Creek; also,

EXCEPTING THEREFROM all that portion of the hereinabove described 400.0 foot wide right of way located in the Northwest quarter of the Southwest quarter of said Section 35; also,

EXCEPTING THEREFROM that portion of the hereinabove described 400.0 foot wide right of way described as follows:

Commencing at the point of intersection of the centerline of the Main Track of the Veazey to Cascade Junction line of the former Northern Pacific Railway Company with the section line common to Sections 34 and 35, Township 20 North, Range 6 East, W.M.;

thence Southwesterly along said centerline of said track on a tangent 368.7 feet to a point of curve;

thence on a 07°00′ curve to the left 259.6 feet, more or less, to the point of intersection of said centerline with the existing fence line produced;

thence leaving said centerline and tracing said fence line and said fence line produced, in a Northwesterly direction to a point 100.0 feet distant Northwesterly from the above named centerline when measured at right angles thereto, said last named point being the TRUE POINT OF BEGINNING of the tract of land herein described (said fence line forming a Northwesterly angle of 81°20′ with the tangent to the above named curve at last said point of intersection);

thence continuing in the same direction along said fence line produced to a point 125.0 feet distant Northwesterly from when measured at right angles to the above named centerline;

thence in a Southwesterly direction on a line parallel with and 125.0 feet distant Northwesterly from the above named centerline when measured at right angles thereto to the North bank of the White River;

thence Westerly along said North bank to a point 200.0 feet distant Northwesterly from said centerline when measured at right angles thereto;

thence Northeasterly on a line parallel with and 200.0 feet distant Northwesterly when measured at right angles to said centerline to an intersection with the section line common to the above named Sections 34 and 35;

thence South along said section line to a point 100.0 feet distant Northwesterly when measured at right angles to said centerline;

thence Southwesterly on a line parallel with and 100.0 feet distant Northwesterly from said centerline when measured at right angles thereto to the TRUE POINT OF BEGINNING.